UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 98-30287

---

J.R. RIDGLEY WYVILL

Plaintiff/Appellee/Cross-Appellant,

v.

UNITED COMPANIES LIFE INSURANCE COMPANY; UNITED COMPANIES
FINANCIAL CORPORATION

Defendants/Appellants/Cross-Appellees,

UNITED COMPANIES LENDING CORPORATION

Appellant/Cross-Appellee.

---

GERALD W. WALDROP

Plaintiff/Appellee/Cross-Appellant,

v.

UNITED COMPANIES FINANCIAL CORPORATION; UNITED COMPANIES
MORTGAGE OF GEORGIA

Defendants/Appellants/Cross-Appellees,

UNITED COMPANIES LENDING CORPORATION

Appellant/Cross-Appellee.

---

Appeals from the United States District Court for the
Middle District of Louisiana

---

May 31, 2000

Before JONES, BARKSDALE, and DENNIS, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellant United Companies appeals from the judgment of the district court, entered upon a jury verdict, awarding substantial damages to two former employees under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Unfortunately, the verdict depends on evidence that this court and others have held inadmissible to support an inference of age discrimination. In particular, the district court allowed the plaintiffs to saturate the record with testimony pertaining to other employees in other branches of the company who held different positions under different supervisors and were terminated at different times. Shorn of this and other irrelevant evidence, the judgment cannot stand.

## I. BACKGROUND

Gerald Waldrop began work with United Companies Lending Corporation (the "Lending Company"), a subsidiary company of defendant United Companies Financial Corporation ("United Companies"), in 1983 as branch manager in Dalton, Georgia.[1] Waldrop's duties included the production of a certain number of loans per month, ensuring that branch staff adequately processed new and existing loans, collecting loans to minimize delinquency rates, and maintaining balanced escrow logs. From 1991 to 1993,

---

[1] Waldrop was hired by United Mortgage of Georgia which was later merged with United Companies Lending Corporation.

the period relevant to this litigation, Waldrop supervised four employees: Sandy Stafford, who was assistant manager; Pat McMillan; Cheryl Welch; and Pat Little. During this period, Waldrop was supervised by D.C. Brantley, who was two years older than Waldrop, and Brantley was in turn supervised by Joe Phillips. Waldrop was terminated from his job in January 1993 when he was forty-seven years old.

According to United Companies, Waldrop's relationship with Brantley began to deteriorate in 1990. Waldrop struck Brantley in the back of the head at a Company function, calling him a son-of-a-bitch, and threatening to "whip his ass" if he ever came to Dalton. When United Companies dismissed Waldrop's son in early 1991, the discord between Waldrop and Brantley escalated. During a telephone conversation among Waldrop, Brantley and Phillips, Waldrop allegedly threatened Brantley with physical harm and told him to keep out of the dispute. Waldrop's insubordination became so intolerable that Brantley sent a memorandum to Phillips asking to be relieved from supervision of the Dalton branch.

Waldrop also had problems with the Dalton branch employees. His abusive behavior towards staff and customers was brought to the attention of William S. Spann, Jr., United Companies' Director of Human Resources, by Sandy Stafford.

In May 1991, Waldrop was given a six-week paid leave of absence. Waldrop contends that medical problems associated with

3

his diabetes forced this leave, while United Companies argues that the leave was necessitated by Waldrop's problems in the office and with his supervisor. Upon Waldrop's return, his relationship with his staff did not improve. In the fall of 1991, he brought both Stafford and Welch to tears after separate outbursts. In November 1991, Spann and Phillips reprimanded Waldrop and made him apologize to his employees.

A year later, two of the Dalton branch employees -- McMillan and Welch -- left the Lending Company. In post-resignation letters to Spann, they blamed Waldrop's behavior for their departures. After receiving these letters, Spann called McMillan, Welch, and Stafford and discovered that Waldrop's behavior had not improved. He discussed Waldrop's behavior with Phillips and they decided to terminate Waldrop. Spann (age 47), Phillips (age 45), and Brantley (age 49) attended the meeting at which Waldrop was dismissed.

Waldrop does not dispute these events. Rather, he points out that throughout his employment, he and his branch were consistently among the top ten performers in the Lending Company, in terms of quantity and profitability of the loans produced. He also asserts that new employees were often sent to him for training and that several of his assistant branch managers became successful managers of their own branches. In addition, he offered evidence that Stafford and McMillan visited his home after his termination,

4

Stafford to ask for his blessing in succeeding him as branch manager, and McMillan to show him her grandchild. Waldrop contends that these visits were not the actions of employees afraid of or antagonized by an abusive and rude boss.

J.R. Ridgley Wyvill began employment with United Companies Life Insurance Company (the "Life Company"), a subsidiary of United Companies, in 1978. From 1980 until his dismissal in February 1993, Wyvill managed the credit life department in Baton Rouge, Louisiana. He was supervised by Lindsay Seals, an executive vice-president of the Life Company, who in turn reported to Gary Warrington, the president of the Life Company.

In January 1993, Wyvill made several allegedly disruptive phone calls to employees of the Lending Company about Waldrop's termination. Carl Scott, a Lending Corporation branch manager in Nashville, heard from Wyvill on January 29, 1993, three days after Waldrop had been fired. Wyvill informed Scott that United Companies "had gotten the Chief," referring to Waldrop, and he warned Scott to "watch his backside." Scott testified that he did not know Wyvill before this call and that the call upset him. He reported the call to Phillips.

The second call was made to Sandy Stafford, Waldrop's assistant manager. Like Scott, Stafford did not know Waldrop and had only met him on two previous occasions during her nine years with United Companies. Stafford was being considered as a

5

replacement for Waldrop, and Wyvill warned her that if she took the position, she would be taking "blood money." Later, Wyvill called Stafford again and asked her to lie to United Companies management who were investigating his telephone calls. Stafford refused.

According to Wyvill, he placed these calls at the behest of Tee Brown, Jr., the son of Terrell Brown, Sr., the CEO of United Companies. The younger Brown wanted Wyvill to investigate an underground newspaper at United Companies, *The Unlink*, that had been critical of United Companies management.

Upon receiving Scott's report about Wyvill's phone call, Phillips pulled the telephone record of calls made from Wyvill's office and discovered that Wyvill had placed phone calls to several former employees who had been terminated or had left under unpleasant circumstances. Phillips notified Spann about these calls, and Spann and Roger Clark, the president of the Lending Corporation, called Stafford and were told about Wyvill's phone call to her.

A meeting was then held, attended by United Companies senior management and Wyvill, where Wyvill was questioned about the nature of his calls. Wyvill did not mention that the calls were part of his investigation into *The Unlink*. Finding Wyvill's explanations insufficient, Wyvill's direct supervisors, Seals (age 58) and Warrington (age 53), with the agreement of the assembled

6

managers, terminated him effective February 1, 1993.  Wyvill was fifty-three years old.

According to Wyvill, his silence with regard to *The Unlink* investigation was meant to protect Tee Brown.  Wyvill later produced testimony that when Brown, Sr. discovered that his son had put Wyvill up to the calls, he paid Wyvill $5000 to "leave quietly."

Both Wyvill and Waldrop sued their former employers.  Their cases were consolidated over the dissent of United Companies.  After procedural skirmishing and a mistrial followed by a six-day trial, the jury returned a verdict finding that the plaintiffs had been discriminated against because of their age and that the discrimination had been willful.  The jury awarded Waldrop $76,569.00 in back pay and Wyvill $186,939.00 in back pay.  The district court entered judgment on the jury's verdict, effectively doubling each man's back pay award because of the finding of wilfullness.  29 U.S.C. § 626(b).  Front-pay to Wyvill, pre-judgment interest, and attorneys' fees were added to the judgment.

United Companies appeals, renewing its arguments, properly preserved in the district court, that the verdict was not supported by substantial evidence and that the district court erred in admitting testimony about and from former United Companies employees who were not similarly situated to either Wyvill or

7

Waldrop.  In addition, United Companies appeals, and Wyvill and Waldrop cross-appeal, various issues relating to damages.  Because we reverse for evidentiary errors and insufficient proof of liability, we do not reach the parties' other arguments.

## II.  DISCUSSION

*A.  Standard of Review*

We review the district court's denial of a motion for judgment as a matter of law <u>de novo</u>.  <u>Scott v. Univ. of Miss.</u>, 148 F.3d 493, 503 (5th Cir. 1998).  "'A motion for judgment as a matter of law . . . in an action tried by jury is a challenge to the legal sufficiency of the evidence.'" <u>Id.</u>, quoting <u>Harrington v. Harris</u>, 118 F.3d 359, 367 (5th Cir. 1997).  Jury verdicts are considered under the standards established in <u>Boeing Co. v. Shipman</u>, 411 F.2d 365, 374 (5th Cir. 1969)(en banc), overruled on other grounds, <u>Gautreaux v. Scurlock Marine, Inc.</u>, 107 F.3d 331 (5th Cir. 1997)(en banc), viewing all the evidence and drawing all reasonable inferences in the light most favorable to the verdict.  <u>Rhodes v. Guiberson Oil Tools</u>, 75 F.3d 989, 993 (5th Cir. 1996)(en banc), citing <u>Boeing</u>, 411 F.2d at 374.

Under <u>Boeing</u>, there must be a conflict in substantial evidence to create a jury question.  <u>Scott</u>, 148 F.3d at 504. "Substantial evidence is defined as 'evidence of such quality and weight that reasonable and fair-minded men in the exercise of

8

impartial judgment might reach different conclusions.'" Rhodes, 75 F.3d at 993, quoting Boeing, 411 F.2d at 374. "A mere scintilla of evidence is insufficient to present a question for the jury." Boeing, 411 F.2d at 374.

*B. Analysis of Plaintiffs' Claims*

In the absence of direct proof of discrimination, the plaintiff in an age discrimination case must follow the three-step burden-shifting framework laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). United Companies argues that Wyvill and Waldrop failed to set out the McDonnell/Douglas-Burdine prima facie case of age discrimination, and their claims should be dismissed. However, because this case has been fully tried on the merits, we "need not address the sufficiency of [plaintiffs'] prima facie case, and may instead proceed directly to the ultimate question of whether [plaintiffs] have produced sufficient evidence for a jury to find that discrimination has occurred." Atkin v. Lincoln Property Co., 991 F.2d 268, 271 (5th Cir. 1993)(quotations omitted).

The critical issue is thus whether Waldrop and Wyvill produced sufficient evidence that United Companies' explanation for their discharges was merely a pretext for age discrimination. In

9

Rhodes v. Guiberson Oil Tools, 75 F.3d 989 (5th Cir. 1996)(en banc), the Fifth Circuit discussed the burden confronting an ADEA plaintiff trying to prove pretext:

> [A] jury issue will be presented and a plaintiff can avoid summary judgment and judgment as a matter of law if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that age was a determinative factor in the actions of which the plaintiff complains. The employer, of course, will be entitled to . . . judgment if the evidence taken as a whole would not allow a jury to infer that the actual reason for the discharge was discriminatory.

Rhodes, 75 F.3d at 994. United Companies argues that plaintiffs did not meet this burden, and we agree. Having comprehensively reviewed the evidence, we conclude that while plaintiffs' evidence may have cast doubt on the proffered explanations for their firing or on the soundness of the company's business decision, it was insufficient to show that the real reason was age discrimination.

*C. Plaintiffs' Evidence of Pretext*

　　1. Anecdotal Evidence

Plaintiffs strongest age-related evidence was "anecdotal" testimony from former United Companies employees that United Companies had a "pattern and practice" of discriminating against older workers. This evidence included witnesses' subjective beliefs that they and others had been terminated on account of age.

United Companies argues that these anecdotal accounts of discrimination should have been excluded as incompetent to support a claim of pattern or practice discrimination. We agree.

A trial judge's ruling on the admissibility of evidence is generally reviewed for an abuse of discretion. Mooney v. Aramco Services Co., 54 F.3d 1207, 1220 (5th Cir. 1995). "We will not reverse a district court's evidentiary rulings unless they are erroneous and substantial prejudice results. The burden of proving substantial prejudice lies with the party asserting error." Id., quoting FDIC v. Mijalis, 15 F.3d 1314, 1318-19 (5th Cir. 1994).

Plaintiffs introduced anecdotal testimony from and about former employees in an effort to show that United Companies, a company of 2700 employees, had a "pattern or practice" of discriminating against older workers. A "pattern or practice" of discrimination does not consist of "isolated or sporadic discriminatory acts by the employer." Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 875, 104 S.Ct. 2794, 2799, 81 L.Ed.2d 718 (1984). Rather, as the Supreme Court has explained, "it must be established by a preponderance of the evidence that '[the impermissible] discrimination was the company's standard operating procedure -- the regular rather than the unusual practice." Cooper, 104 S.Ct. at 2799 (citations omitted). Often, an illegal pattern and practice is revealed with statistical proof.

11

Anecdotes about other employees cannot establish that discrimination was a company's standard operating procedure unless those employees are similarly situated to the plaintiff. Mooney, 54 F.3d at 1221. This court and others have held that testimony from former employees who had different supervisors than the plaintiff, who worked in different parts of the employer's company, or whose terminations were removed in time from the plaintiff's termination cannot be probative of whether age was a determinative factor in the plaintiff's discharge. See id.[2]

In this case, the plaintiffs' anecdotal evidence did not involve similarly situated employees. With regard to Wyvill, none of the former employees who testified or who were testified about worked in the Life Company. The Life Company was a separately incorporated entity with different management independent from the Lending Company. None of the former employee witnesses was supervised by either Lindsay Seals or Gary Warrington, Wyvill's supervisors. None of the former employees was terminated under

---

[2] Goff v. Continental Oil Co., 678 F.2d 593, 596-97 (5th Cir. 1982)(upholding the exclusion of testimony from former employees who did not work with plaintiff and who had no personal knowledge of the events surrounding plaintiff's discharge); Swanson v. General Services Administration, 110 F.3d 1180, 1190 (5th Cir. 1997)(affirming the exclusion of testimony from witnesses who did not work in plaintiff's office where their anecdotal accounts of discrimination were based on speculation.); Schrand v. Federal Pacific Electric Co., 851 F.2d 152, 156 (6th Cir. 1988)(finding that testimony from former employees who worked in different offices from plaintiff and under different supervisors was irrelevant to plaintiff's age discrimination claim).

12

circumstances similar to Wyvill's. It is true that several of the former employees could testify to their relationship with Bill Spann, who participated in firing Wyvill. But this single coincidence between Wyvill's experience and that of the anecdotal witnesses could not render them similarly situated.

Regarding Waldrop, none of the witnesses were branch managers in the Lending Company and none had been supervised by D.C. Brantley within a reasonable time of Waldrop's termination in 1993. Jim Davis, for example, was a regional vice-president of the Lending Company with duties that included supervision of sixty-five branch offices. He reported to Joe Phillips, and he testified that Phillips and Bill Spann terminated him after first demoting him to branch manager. The stated reasons for Davis's termination -- a "lack of chemistry" and a failure to meet production quotas -- were different from the explanation behind Waldrop's discharge -- rude and abusive conduct toward staff and customers. The only link between Davis and Waldrop was the role of Joe Phillips in their respective terminations, but this alone hardly furnishes a probative guide to Waldrop's experience with United Companies. It would be particularly odd to view Phillips's role as incriminating the Lending Company since he, too, testified for Waldrop that he was a victim of age discrimination.

Phillips was as dissimilar to Waldrop as Davis was, making his testimony equally irrelevant. He held a different job,

13

regional vice-president, and he reported to a different supervisor, Roger Clark. Witnesses Garold Cooke and Floyd Desormeaux were likewise dissimilar to Waldrop. Cooke, who reported to Phillips, was an area supervisor of seven branch offices in the Lending Company, and Desormeaux was a vice-president of the Lending Company. Although all these witnesses seem to have been similarly situated among themselves as senior managers with United Companies, nothing about their experiences connected with Waldrop. They held different jobs than Waldrop, executed different duties, and were accountable to different supervisors. We have excluded such testimony in the past as irrelevant in supporting a "pattern or practice" claim, and we must do so again here. See Mooney, 54 F.3d at 1221.[3]

By admitting this evidence, the district court substantially prejudiced United Companies, forcing it to respond to each witness's claims, and creating, in effect, several "trials within a trial." See Mooney, 54 F.3d at 1220-1221 (quoting the district court's opinion that anecdotal testimony forced the defendant to litigate more than the claims actually set for trial).

---

[3] For the same reasons, we find that the court abused its discretion when, during closing argument, it allowed counsel for Wyvill and Waldrop to recite the names of forty-four former employees and to claim that these employees were victims of discrimination by United Companies. There was no evidence that these employees were similarly situated to Wyvill and Waldrop, and there was indeed no evidence, beyond counsel's naked assertion, that these employees had been discriminated against.

14

As we have seen, these mini-trials were not probative on the issue of whether Waldrop or Wyvill faced discrimination.  See <u>Sims v. Mulcahy</u>, 902 F.2d 524, 531 (7th Cir. 1990)(holding that the introduction of alleged discriminatory acts with no relation to the discrimination claimed by the plaintiff creates "mini-trials" with no probative value).

The prejudice worked by this testimony was all the greater because of the mini-trials' effectiveness.  As noted above, the anecdotal witnesses all held similar senior level positions with the Lending Company and could be said to have been similarly situated to one another.  In addition to contending that they had suffered from age discrimination, the witnesses claimed personal knowledge of the events surrounding each other's terminations.  Their testimony would have been relevant if they had been plaintiffs, but they were not, and the fact that these witnesses made each other's case so well distracted attention from the fact that they had little to say about Wyvill's and Waldrop's terminations.[4]

Given the plaintiffs' inability to offer any direct evidence of age discrimination, this parade of anecdotal witnesses, each recounting his own, entirely unrelated contention of age

---

[4]  In fact, Davis, Cooke, and Desormeaux all testified that they had no personal knowledge of the circumstances surrounding the terminations of Wyvill and Waldrop.

15

discrimination at the hands of the defendant, substantially prejudiced United Companies. This evidence should have been excluded, and we hold that the district court abused its discretion in not doing so.

### 2. Age-Based Comments

Plaintiffs also relied on several age-related comments made by United Companies CEO Terrell Brown, Sr. as proof that age-bias motivated the terminations here. Former employee Jim Davis testified that "[Brown, Sr.] felt that . . . the world had passed [some of the older employees] by, that [the older employees] were just too old to get the job done, and that we should either find another position for them or terminate them." Former employee Joe Phillips testified that "in the early nineties, [Brown, Sr.] told me that he wanted the company to be mean and lean, and he wanted to go to a young, aggressive group of people." Phillips further testified that Brown, Sr. generally wanted to "get rid of the people that were [currently employed at United Companies] so that we can make more money, be more aggressive, more productive." Former employee Garold Cooke testified that Brown Sr. "wished [the older men in corporate headquarters] would go away so that [Brown, Sr.] could get some new blood in the company."

Assuming, as plaintiffs allege, that Brown, Sr. was one of the decision-makers in the terminations of Wyvill and Waldrop, his "stray remarks" are insufficient to create an inference of age

16

discrimination.[5]  <u>See</u>, <u>e.g.</u>, <u>Waggoner v. City of Garland</u>, 987 F.2d 1160, 1166 (5th Cir. 1993); <u>Turner v. North American Rubber, Inc.</u>, 979 F.2d 55, 59 (5th Cir. 1992).  In order for an age-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was a determinative factor in the decision to terminate the employee.  <u>Equal Employment Opportunity Commission v. Texas Instruments, Inc.</u>, 100 F.3d 1173, 1181 (5th Cir. 1996), citing <u>Bodenheimer v. PPG Industries, Inc.</u>, 5 F.3d 955, 958 (5th Cir. 1993).  Brown's remarks do not satisfy this test.  They are neither direct and unambiguous, nor were they tied to a time frame relevant to this case.  These remarks were not probative on the ultimate question of age discrimination against Waldrop and Wyvill.

### 3.  Disparate Treatment Claim

In addition to anecdotal evidence concerning other employees, Waldrop argued that he was treated more harshly than a similarly-placed younger employee.  Waldrop contrasted his fate with that of Dwayne Burks, an area supervisor in North Carolina

---

[5] Former employee Garold Cooke alleged that his supervisor, Mark McKinney, repeatedly made age-related comments evidencing age-bias.  But there is no evidence that McKinney was a decision-maker with regard to the terminations of Wyvill and Waldrop, and his attitude toward age is therefore irrelevant to plaintiffs' claims.  <u>See</u> <u>Medina-Munoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 10 (1st Cir. 1990)("The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case.").

17

until 1996, who was also guilty of abusive and rude conduct to staff and employees but did not lose his job as a result. To establish a claim of disparate treatment, Waldrop must show that United Companies gave preferential treatment to a younger employee under "nearly identical" circumstances. <u>Little v. Republic Refining Co., Ltd.</u>, 924 F.2d 93, 97 (5th Cir. 1991), citing <u>Smith v. Wal-Mart Stores</u>, 891 F.2d 1177, 1180 (5th Cir. 1990)(per curiam). Waldrop did show that Burks was younger (he was in his thirties), that Burks was abusive and rude to United Companies employees, and that there was significant employee turnover in the offices supervised by Burks. He also proved that Burks was demoted rather than fired for his misconduct.

But the striking differences between the two men's situations more than account for the different treatment they received. To begin with, Burks held a different job than Waldrop. Burks's employment problems also differed from Waldrop's. Though he was similarly abusive to his staff, he did not antagonize his immediate superior as Waldrop did. Most importantly, the decision-makers who disciplined Waldrop differed from those who were charged with deciding what action to take against Burks. Waldrop was terminated by Spann and Phillips, while the decision to demote Burks was taken by the current president of the Lending Company, G.G. Hargon, in 1996. As a final point, there is even evidence that Waldrop was treated better than Burks. Waldrop was given

18

several chances to correct his behavior, including a paid leave of absence, after which he was allowed to return to his manager position. Burks, however, was never given the opportunity to return to his supervisor's position after his demotion. The circumstances surrounding the disciplining of Burks and Waldrop thus fell short of "nearly identical," and reasonable jurors could not have justifiably believed otherwise.

### 4. Building a File

To show that United Companies' stated reasons for firing them were false, Wyvill and Waldrop alleged that United Companies management ordered supervisors to "build a file" on older workers. According to the plaintiffs, these files, documenting an employee's misdeeds and shortcomings, were used as a fig-leaf to cover any illegal employment actions taken against the employee. As proof that such files were "built" -- that is, created to provide cover for age-motivated terminations and not in the regular course of business -- plaintiffs alleged that United Companies supervisors violated their own standard employee disciplinary procedures in order to make sure the files contained as much damaging information as possible.

Assuming that United Companies did not follow standard procedures in compiling disciplinary records on Wyvill and Waldrop, this Court has previously observed that

19

> [p]roof that an employer did not follow correct or standard procedures in the termination or demotion of an employee may well serve as the basis for a wrongful discharge action under state law. As we have stated, however, the ADEA was not created to redress wrongful discharge simply because the terminated worker was over the age of forty. A discharge may well be unfair or even unlawful and yet not be evidence of age bias under the ADEA. To make out an ADEA claim, the plaintiff must establish some nexus between the employment actions taken by the employer and the employee's age. [A] bald assertion that one exists . . . simply will not suffice.

Moore v. Eli Lilly & Co., 990 F.2d 812, 819 (5th Cir. 1993), citing Bienkowski v. American Airlines, Inc., 851 F.2d 1503, 1508 n. 6 (5th Cir. 1988). Here, plaintiffs put forth no evidence that would create a nexus between United Companies's file-building and the plaintiffs' ages. There was no evidence, for example, that United Companies kept files only on older workers, or that it complied with standard disciplinary procedures when filing reports on younger workers but flouted them when it came to Wyvill and Waldrop. Nor was there evidence that United Companies faithfully recorded the disciplinary violations of younger workers but fabricated those which, according to United Companies, motivated the terminations of Wyvill and Waldrop. The act of maintaining disciplinary files on employees, without more, is not illegal under the ADEA. In the absence of any nexus between plaintiffs' allegation of file-building and their ages, such assertions are

insufficient to create an inference that plaintiffs were fired on account of age.

5. Additional Evidence of Age Discrimination

The remaining evidence introduced by plaintiffs might have been sufficient to cast doubt on United Companies' proffered explanations for plaintiffs' discharges, but it did nothing to raise an inference that the real reasons for the discharges were related to age. Plaintiffs put on extensive evidence that they were well-qualified for their respective jobs and that they had achieved considerable success. Waldrop introduced testimony that Brantley, his supervisor, was difficult to work for and largely to blame for his employment problems. Wyvill introduced evidence that he was put up to his unauthorized phone calls by the CEO's son, Terrell Brown, Jr. But even assuming the truth of these allegations, they allow at best an inference that United Companies' proffered explanations for the discharges were false. This evidence notably fails to connect the plaintiffs' discharges to the their ages, and it therefore does not permit an inference that age was a motivating factor in the terminations.

In sum, neither Wyvill nor Waldrop produced sufficient evidence to allow a reasonable jury to infer that United Companies terminated them because of age. In Weisgram v. Marley Co., -- U.S. --, 120 S.Ct. 1011 (2000), the Supreme Court affirmed the authority of courts of appeals to direct the entry of judgment as a matter of

21

law in cases where, once erroneously admitted evidence is removed from consideration, there remains insufficient evidence to support the jury's verdict.  <u>Weisgram</u>, 120 S.Ct. at 1022.  Accordingly, finding that the properly admitted evidence in this case was insufficient to support the jury's verdict in favor of plaintiffs, we vacate the district court's judgment and remand for entry of judgment in favor of United Companies.

## III.  CONCLUSION

For the foregoing reasons, the district court's judgment is VACATED and REMANDED for the entry of judgment as a matter of law in favor of United Companies.

22