**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 00-60612**

_____

**PEGGY THOMPSON,**

**Plaintiff/Appellee-Cross-Appellant,**

**versus**

**CITY OF TUPELO, DAVID LEDBETTER,
In His Individual Capacity,**

**Defendants/Appellants-Cross-Appellees.**

_____

Appeals from the United States District Court
for the Northern District of Mississippi
Civil Docket #1:98-CV-226

_____

July 26, 2001

Before REYNALDO G. GARZA, DAVIS, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:[*]

Peggy Thompson sued the city of Tupelo, Mississippi, and

then-deputy police chief David Ledbetter after her discharge as a

police officer, alleging sex discrimination and retaliation for the

exercise of her First Amendment rights. A jury found in her favor.

The trial court entered judgment on the verdict for about

_____

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

$400,000.00 against both defendants, including $300,000.00 in non-pecuniary damages for mental and emotional anguish against the City and $50,000.00 in punitive damages against Ledbetter (who is not a party to this appeal). The City of Tupelo asserts a number of errors on appeal, but we find merit only in its contention that the award of non-economic damages was excessive. Further, we agree with Thompson's contention, made in her cross-appeal, that she is entitled to reinstatement from the date of the jury verdict. The judgment is affirmed in part but must be vacated and the case remanded on these points.

The City's challenges to the verdict, although not frivolous, cannot overcome the substantial hurdle that any challenge to an adverse jury verdict faces. This court may not reverse the award unless no reasonable jury could have found sex discrimination or retaliation for Thompson's exercise of her protected right to pursue an earlier sex discrimination lawsuit. Boeing Company v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), overruled on other grounds by Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331 (5th Cir. 1997) (en banc). Anterior to the sufficiency questions, however, are the City's assertions that the court erroneously admitted (1) evidence shielded by the attorney-client privilege and (2) evidence of non-comparable claims of sex discrimination within the Tupelo Police Department. The trial

court almost surely erred in the first instance, admitting over the City's objection the substance of a conversation among city officials and their attorneys in litigation matters relating to Thompson. The fact that a former City employee (who participated in the meeting while he was a City employee) volunteered to testify about the conversation at trial cannot waive the City's confidentiality privilege. Moreover, the admission of tales of discrimination by other former female Tupelo applicants or law enforcement officers may not have complied with the standards for admissibility recently reiterated in <u>Wyvill v. United Companies Life Insurance Co.</u> 212 F.3d 296, 302-304 (5th Cir. 2000).

The trial court's possible errors did not, however, substantially harm Tupelo's defense. <u>See</u> Fed. R. Civ. P. 61. The jury could have believed the attestation of Thompson's excellent job performance from police department officials with whom she had worked. It could have believed that Deputy Chief Ledbetter had made various statements indicating his discomfort with women police officers and admonishing Thompson, in connection with her earlier suit, that no one who sued the police department remained employed there. The jury could have concluded that Ledbetter spearheaded the investigation that led to Thompson's discharge less than a month after she settled the previous case with the City. It could have concluded that the proffered reasons for her discharge – the

3

WalMart parking incident; the cigarette burn hole in her police car; and the collision with a civilian vehicle – were overblown or mischaracterized to Thompson's detriment. These inferences were not the only possible inferences to draw in a hotly contested case, but they are certainly plausible based on the evidence. The liability verdict must stand.

With regard to the $300,000 judgment for non-economic damages, the City urges a remittitur to align this amount both with Thompson's slim proof of such damages and with other recent Fifth Circuit cases. This court has held that a plaintiff who seeks damages for emotional injury following an adverse employment action must prove "a 'specific discernable injury to the claimant's emotional state,' . . . proven with evidence regarding the 'nature and extent' of the harm." Brady v. Fort Bend County, 145 F.3d 691, 718 (5th Cir. 1998), cert. denied, 525 U.S. 1105 (1999), quoting Patterson v. PHP Health Care Corp., 90 F.3d 927, 938, 940 (5th Cir. 1996). In Brady and Patterson, verdicts for non-economic damages based on emotional distress were vacated for lack of specific proof. The two decisions are based on the Supreme Court's requirement that compensatory damages for emotional distress "be supported by competent evidence concerning the injury." Carey v. Piphus, 435 U.S. 247, 264 n.20, 98 S.Ct. 1042 (1978). Both

4

decisions discuss the law extensively, obviating the need for repetition here.

Only a year ago, Brady and Patterson were reinforced by a decision in which we ordered remittitur of a $300,000 mental anguish award to $10,000 in a Title VII retaliation case. Vadie v. Mississippi State Univ., 218 F.3d 365, 375-78 (5th Cir. 2000). Vadie's testimony, uncorroborated by medical evidence, was that he suffered from sleeplessness "for months at a time," headache, and nausea; and that he remained "under severe doctor surveillance." Id. at 377. This court found the testimony entirely disproportionate to Vadie's injury.

In another case, however, this court summarily upheld non-economic damage verdicts of $100,000 and $75,000 based on two plaintiffs' specific testimony that they endured depression, weight loss, intestinal troubles, sleeplessness and marital problems following retaliatory reassignments by the police department where they worked. Forsyth v. City of Dallas, 91 F.3d 769, 774 (5th Cir. 1996). Forsyth offers "slim guidance" to determine the sufficiency of emotional distress testimony. Compare Brady, 145 F.3d at 720. Forsyth also post-dates the controlling decision in Patterson.

This case more closely resembles Brady, Patterson and Vadie than Forsyth. There is precious little testimony in a 940-page record, at most a few pages, concerning Thompson's emotional

5

distress damages. The gist of it is as follows: She took antidepressants both before and after being fired; her only two visits to a psychologist occurred during preparation for her two lawsuits; other than stress, which she also experienced while working for the Tupelo police department, she testified to no specific emotionally rooted damages upon losing her job. She repeatedly testified how much it meant to her to be a police officer. But the record lacks any proof that objective signs of mental distress, such as sleeplessness or stomach troubles, were caused by her discharge. No medical expert testified for Thompson, but our case law does not require it. Further, a friend, Bobby Frazier, stated that he had seen her cry over her job loss trauma and embarrassment.

A remittitur may be ordered to reduce a verdict that is "contrary to right reason" or "entirely disproportionate to the injury sustained." Eiland v. Westinghouse Elec. Corp., 58 F.3d 176, 182-83 (internal citations omitted) (5th Cir. 1995). Similar to Vadie, the evidence concerning severe emotional distress is weak. On the other hand, unlike the plaintiff in Vadie, Thompson lost her job. Consequently, we order a remittitur in the amount of $250,000, reducing her non-economic damages to $50,000. Should Thompson refuse to accept this reduction, we order a new trial on this element of damages. Vadie, 218 F.3d at 378. This amount

6

seems to be the maximum that a jury could have awarded consistent with our precedents on noneconomic damages.

On cross-appeal, Thompson urges that the district court's reinstatement order be modified to run from the date of the jury verdict rather than at a later date, as the court ordered. Under Boddie v. City of Columbus, 989 F.2d 745, 752 (5th Cir. 1993). The court's order was wrong. Thompson was entitled to compensation for her lost wages from the date of verdict until reinstatement. The City's arguments concerning failure to mitigate are untimely raised and we do not consider them.

For the foregoing reasons, the judgment is affirmed in part but vacated in part and remanded (a) to award Thompson reinstatement wages from the date of the verdict, and (b) to reduce the emotional anguish damages to $50,000 or require a new trial on Thompson's non-economic damages.

**AFFIRMED** in part, **VACATED** in part and **REMANDED** with instructions.