IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-11033
Summary Calendar

_____


RICHARD MARTINEZ,

Plaintiff-Appellant,

v.

UNITED PARCEL SERVICE, INC.,

Defendant-Appellee.

---------------------------------
Appeal from the United States District Court
for the Northern District of Texas
(00-CV-324)
---------------------------------
February 28, 2002

Before DAVIS, BENAVIDES, and CLEMENT, Circuit Judges.

BENAVIDES, Circuit Judge:[1]

In this employment discrimination case, Plaintiff-Appellant Richard Martinez ("Martinez")

appeals the district court's entry of summary judgment in favor of Defendant-Appellee United Parcel

Service, Inc. ("UPS"). For the following reasons, we affirm the judgment of the district court.

I.

Martinez worked as a package car driver for UPS for nearly twenty years. As a UPS driver,

---

[1]Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

--1--

he was also a member of the International Brotherhood of Teamsters, Local 577 ("the union"). The terms and conditions of his employment were governed by the National Master United Parcel Service Agreement and Southern Region Supplemental Agreement ("the National Master Agreement"). Martinez was terminated after he was involved in an accident on April 2, 1999 in the parking lot of one of his customers. The parking lot was sloped downward toward a road, and Martinez carelessly forgot to use the emergency brake when he parked the car and went inside to deliver a next day air letter. When he returned to his truck, it had rolled more than 50 feet into a chain link fence. According to the accident report, the damage was estimated at $75. Pursuant to UPS policy, Martinez called to report the accident. He spoke to Rodney Lee, a UPS supervisor. After a UPS investigation into the accident, the company concluded that it was avoidable. As a result of this conclusion, UPS asked Martinez to submit to a drug test administered by an independent facility. The results came back positive for marijuana. On April 13, 1999, UPS discharged Martinez under Article 52 of the National Master Agreement, citing an "avoidable runaway accident" as the cause.

Martinez subsequently filed a grievance contesting his discharge in accordance with Article 51 of the National Master Agreement. Initially, he met with a UPS manager, Bob Barrows ("Barrows"), and a union representative, Brian Ahearn ("Ahearn"). After that initial meeting, at which the drug test was discussed, Barrows determined that termination was proper and denied Martinez's grievance. A hearing was then conducted before a joint panel of UPS and union representatives. The panel unanimously upheld the termination and denied Martinez's grievance.

Martinez brought this Title VII action against UPS, alleging national origin discrimination. UPS moved for summary judgment, which the district court granted. Martinez then timely filed this appeal.

II.

Our analysis follows the familiar burden shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). UPS does not dispute that Martinez has satisfied his *prima facie* burden, and it contends that Martinez was fired as a result of his involvement in an avoidable accident. The burden therefore shifts back to Martinez to show that this proffered explanation is merely pretext for discrimination. The district court held that Martinez failed to create a genuine issue of material fact regarding pretext. We review the judgment of the district court *de novo*. *Blow v. City of San Antonio, Tex.*, 236 F.3d 293, 296 (5th Cir. 2001).

Martinez argues that pretext can be inferred from UPS's more favorable treatment of a similarly situated driver who is Caucasian. Like Martinez, James C. Clements ("Clements") was involved in an avoidable roll-away accident. He was also terminated as a result of the accident, but his grievance petition was more successful, and his discharge was reduced to a two week suspension. Martinez acknowledges a critical distinction, however, between his case and Clements', namely that Clements also took a drug test after his accident and passed. This crucial difference belies any suggestion that the two drivers were similarly situated. *See Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304-05 (5th Cir. 2000) (requiring "nearly identical" circumstances and noting that "striking differences" between two situations accounted for different treatment).

Martinez attempts to avoid this distinction by attacking the validity of the drug test. Even if he is correct, however, this argument does not give rise to an inference of pretext. Martinez has failed to show that UPS treated him differently regarding the administration of the test or that it did not rely on the test result in good faith. Similarly, the fact that UPS did not expressly state its reliance on the drug test results during the termination and grievance procedures does not create a triable fact

issue as to pretext.  Martinez acknowledged in his deposition that Barrows was aware of the drug test result during the first grievance meeting.  Finally, Martinez claims that at the grievance hearing UPS used an exaggerated damage estimate and overstated the distance that the truck rolled.  This argument, too, is insufficient to avoid summary judgment, as it does not suggest that the panel's decision to uphold the termination decision was motivated by discrimination.

### III.

As Martinez admits, his argument that the district court erred in granting summary judgment centers on his contention that he received disparate treatment in relation to Clements.  He has failed, however, to account for the crucial distinction between the two cases–that he, not Clements, failed the post-accident drug test.  Because Martinez and Clements are therefore not similarly situated, any comparison between them cannot yield an inference of discrimination.  Accordingly, we AFFIRM the district court's entry of summary judgment in favor of UPS.