# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-60666
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

May 15, 2014

Lyle W. Cayce
Clerk

TERRY ANDERSON,

Plaintiff-Appellant,

v.

TUPELO REGIONAL AIRPORT AUTHORITY,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC. No. 3:11-CV-131

Before STEWART, Chief Judge, and SMITH and DENNIS, Circuit Judges.
PER CURIAM:*

Plaintiff-Appellant Terry Anderson ("Anderson") appeals the district court's summary judgment in favor of Tupelo Regional Airport Authority ("TRAA") on his age discrimination claim. We affirm.

## I. FACTUAL AND PROCEDURE BACKGROUND

TRAA hired Anderson in 2000 to serve as its Executive Director. As Executive Director, Anderson was responsible for the operations and maintenance of the Tupelo Regional Airport and he answered directly to

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-60666

TRAA's Board of Directors ("the Board"). During Anderson's tenure as Executive Director, the airport explored the possibility of extending its runway. In 2009, Anderson and some Board members believed the runway extension was a positive step for TRAA while others thought more research needed to be performed prior to moving forward with the project. Several Board members and various members of the community were opposed to the runway extension project, as it stood, because it required relocating an important thoroughfare in Tupelo called West Jackson Street Extended.

Public opposition and other logistical concerns caused the Board to place the runway extension project on hold in November 2009. After the Board took official action to halt the project, Anderson sent two emails to the Northeast Mississippi Daily Journal ("Daily Journal") in which he expressed disagreement with the Board's decision. In response to Anderson's emails, a journalist from the Daily Journal submitted several questions to Anderson about the runway extension project's future. Anderson's answers to the questions made clear that he disagreed with the Board's decision to halt the project.

Shortly thereafter, the Daily Journal published an article citing the opinions Anderson conveyed in his emails to the journalist. Subsequent to the article's publication, Board members questioned Anderson about whether he provided information to the Daily Journal that was published in the article. Anderson denied providing the information. A Board member approached the journalist who wrote the article and inquired as to his source for certain information contained therein. The journalist confirmed that Anderson was the source and provided the Board member with copies of Anderson's emails.

Around the same time, Board members asked Anderson additional questions that they believe he answered untruthfully. For example, Anderson was asked who provided telephone service to the Tupelo Airport and he stated

that he did not know. Also, when asked whether he was represented by counsel, Anderson said that he was not. Board members believed that Anderson's claimed lack of knowledge of who provided the airport with telephone service was either dishonest or indicative of a lack of competence. Board members also believed that Anderson's claim that he was not represented by counsel was dishonest because the Board's attorney previously received a letter from an attorney who referred to Anderson as his client. The culmination of these incidents resulted in the Board's terminating Anderson due to a "loss of confidence." In addition to the aforementioned incidents, other Board members claimed, *inter alia*, that Anderson failed to meet their expectations with respect to keeping them abreast of certain financial obligations.

The Board's dissatisfaction with Anderson's performance was not, however, unanimous. Two Board members provided affidavits stating that during their time on the Board, Anderson was "highly competent and trustworthy" and that they had no complaints about Anderson's work performance. Nevertheless, a majority vote resulted in Anderson's termination on December 8, 2009. Anderson was 64 years old at the time of his termination.

After Anderson was discharged, TRAA initiated a nationwide search for his replacement. Initially, TRAA offered the Executive Director position to a candidate who was 46 years old, but he declined the offer for personal reasons. Next, TRAA offered the position to a 33-year-old candidate and he accepted TRAA's offer. After learning that TRAA hired a 33-year-old as his replacement, Anderson filed a federal civil suit alleging that he was unlawfully terminated because of his age and in violation of his First Amendment right to free speech.

No. 13-60666

TRAA moved for summary judgment on both claims. With respect to the age discrimination claim, TRAA argued that Anderson was terminated not because of his age, but rather because of the Board's "loss of confidence" in his ability to adequately manage Tupelo Regional Airport. TRAA also argued that it committed no First Amendment violation by terminating Anderson because the speech at issue was made pursuant to his official duties and not protected under the First Amendment. The district court granted TRAA's motion for summary judgment as to both claims. Anderson appeals the district court's judgment on his age discrimination claim. He has not appealed the district court's judgment with respect to his First Amendment claim. For the reasons explained herein, we affirm.

## II.  DISCUSSION

### A.  Standard of Review

"We review the district court's grant of summary judgment . . . de novo, applying the same standard" as the district court. *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002) (citation omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Although we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, the nonmoving party may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000) (citation and internal quotation marks omitted). "[C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

### B.  Applicable Law

4

No. 13-60666

Under the Age Discrimination in Employment Act ("ADEA"), it is unlawful for an employer to discharge an employee because of the employee's age. *See* 29 U.S.C. § 623(a)(1). To establish a claim under the ADEA, an aggrieved employee "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 928 (5th Cir. 2010) (citation omitted). "In the absence of direct proof of discrimination, the plaintiff in an age discrimination case must follow the three-step burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) . . . and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981) . . . ."[1] *Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 301 (5th Cir. 2000). First, Anderson must establish a prima facie case of age discrimination by showing that "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005) (citations and internal quotation marks omitted).

If Anderson establishes a prima facie case of age discrimination, then TRAA must "proffer a legitimate nondiscriminatory reason for its employment action." *Id.* If TRAA provides a legitimate nondiscriminatory reason for its employment action, the presumption of discrimination established by Anderson's prima facie case disappears and Anderson must satisfy his ultimate burden of proving intentional discrimination. *Id.* (citation omitted).

---

[1] We perceive no direct evidence of age discrimination in this case. "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 310 n.6 (5th Cir. 2004) (citation and internal quotation marks omitted).

Anderson can meet this burden by showing that the reasons provided by TRAA for his termination are a pretext for age discrimination. *See id.* We have held that "a plaintiff advancing an ADEA claim using only circumstantial evidence [must] prove that discriminatory animus was the determinative basis for his termination." *Id.* at 351 (citations and internal quotation marks omitted). "As a practical matter, this requirement dictates that the plaintiff put forward evidence rebutting each one of a defendant's nondiscriminatory explanations for the employment decision at issue." *Id.* In other words, the plaintiff must provide evidence showing that each of the defendant's stated explanations for termination is pretextual.

However, a mere scintilla of evidence of pretext does not create a genuine issue of material fact. *Wyvill*, 212 F.3d at 301. A plaintiff must present enough evidence to prove that "the employer's asserted justification is false." *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

> For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Id.* (citations omitted). Whether summary judgment is ultimately appropriate depends on a number of factors which "include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Id.* at 148–49.

### B. Analysis

It is clear that Anderson sufficiently established a prima facie case of age discrimination. He was discharged from his position as Executive Director of

TRAA, he was qualified to hold that position, he was within the protected class at the time he was terminated, and he was replaced by a younger person. *See Machinchick*, 398 F.3d at 350. Therefore, our analysis focuses directly on whether TRAA provided a legitimate nondiscriminatory reason for Anderson's termination and, if so, whether Anderson demonstrated that TRAA's reason was pretextual. Accordingly, we begin our analysis by recounting the principal explanations TRAA provided for its decision to terminate Anderson. We then explore Anderson's proof that TRAA's explanations were pretextual. Finally, we discuss whether any fact issues should be resolved by a jury, thereby making summary judgment inappropriate in this case.

### 1. TRAA's Stated Reasons for Terminating Anderson

According to the testimony of several members of the Board, TRAA terminated Anderson because he provided false information regarding (1) whether he knew who provided telephone service to the airport; (2) whether he made statements about the runway extension project to a journalist from the Daily Journal; and (3) whether he was represented by counsel. Anderson's alleged dishonesty resulted in a "loss of confidence"—by a majority of the Board—in Anderson's ability to execute his duties as Executive Director. In addition to the aforementioned reasons for Anderson's termination, the record indicates that several Board members had additional concerns about Anderson's ability to competently manage the airport. For example, a Board member explained that during Anderson's leadership, there were lower boardings at the airport, undesirable flight schedules, and Anderson had difficulty working with a Federal Aviation Administration official. Furthermore, a Board member testified that there were concerns about Anderson's management style and complained about an instance where Anderson failed to provide the Board with necessary financial information. Nevertheless, the predominant reason for Anderson's termination was his

perceived dishonesty with the Board.  One Board member testified as to why honest communication between the Executive Director and the Board is imperative:

> If [the Executive Director] makes an untruthful statement to a lay board, volunteers who are totally dependent, and not experts, upon his word, then he can't remain in that position.  And so, [Anderson] was terminated for loss of confidence.

The record makes clear that the Board's stated reason for terminating Anderson was his dishonesty that resulted in a loss of confidence.  We conclude that the Board's explanation, if true, constitutes a legitimate nondiscriminatory reason for Anderson's termination.

## 2.  Anderson's Proof That TRAA's Reasons Are Pretextual

Anderson posits that there is a genuine issue of material fact with respect to whether the Board's stated reason for his termination is a pretext for age discrimination.  To support this assertion, Anderson argues that: (1) a Board member testified that Anderson's performance as Executive Director was excellent and did not warrant termination; (2) the Board's allegation that he provided false information is untrue; and (3) the Board's chairman referred to Anderson as "too regimented" and "set in his ways," evincing his ageism.

Anderson offered as evidence the affidavit of a former Board member, Carlyle Harris ("Harris"), which stated that Anderson was "highly competent and trust worthy."  According to Harris, the Board's stated reasons for terminating Anderson were "trumped up" and there was no legitimate explanation for the termination.  Harris's affidavit, which is conclusory and states an opinion, does not suffice to create a genuine issue of material fact.  As the Supreme Court explained in *Celotex Corp. v. Catrett*, the nonmoving party on a motion for summary judgment must provide "specific facts showing that there is a genuine issue for trial." 477 U.S. 317, 324 (1986); *see also First United Fin Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 139 (5th Cir. 1996) (Garza, J.,

concurring) (per curiam). Affidavits that supply "ultimate or conclusory facts and conclusions of law are insufficient" to create a genuine issue of material fact. *See Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (citation and internal quotation marks omitted). Therefore, we conclude that Harris's affidavit does not create a genuine issue of material fact.

Anderson also argues that he provided truthful answers to the Board's questions and—therefore—the Board's reasons for terminating him are pretextual. We disagree. Anderson's argument is misguided for several reasons. We note that Anderson's argument is largely based upon his assertion that all of his statements to the Board were in fact true. The more appropriate question, regardless of whether Anderson's statements were actually true, is whether the Board had reason to believe his statements were false or misleading. *See Nasti v. CIBA Specialty Chem. Corp.*, 492 F.3d 589, 595 (5th Cir. 2007) (holding that no genuine issue of material fact existed where an employer's stated reason for termination was its reasonable belief that the aggrieved employee submitted a false report to the employer).

The record demonstrates that members of the Board reasonably believed that Anderson was less than forthcoming when he stated that he did not know who provided telephone service to the airport. The Board expected that the airport's Executive Director would be able to provide this information if he was competently attentive to the airport's operations. Moreover, a Board member testified that he had previous conversations with Anderson where Anderson demonstrated his knowledge of the airport's telephone service providers. Anderson has not provided sufficient evidence to demonstrate that the Board's belief that he was dishonest about his knowledge of the airport's telephone service providers was unreasonable.

Furthermore, the record demonstrates that Board members disbelieved Anderson when he claimed he had not provided information that was included

in a Daily Journal article. A Board member testified that he questioned the journalist who wrote the article and the journalist verified that Anderson was the source for certain information published therein. Again, Anderson has failed to provide evidence demonstrating that the Board's belief that he was dishonest about this fact was unreasonable.

Finally, the record demonstrates that Board members believed that Anderson was dishonest when he claimed that he was not represented by counsel. Prior to questioning Anderson about whether he was represented by counsel, the Board's attorney received a letter from an attorney who referred to Anderson as his client. At the time Anderson denied being represented by counsel, he may have truly believed that he was being honest with the board. We need not decide whether Anderson believed he answered the Board's questions honestly. As stated previously, the important question is whether members of the Board reasonably believed Anderson was dishonest when he stated that he was not represented by counsel. Anderson has provided no information—besides his own testimony regarding his subjective belief—that suggests that the Board's belief was unreasonable.

In summary, whether Anderson truly believed he was being honest with the Board in answering their questions is not the proper inquiry. Our inquiry focuses on whether TRAA's stated reasons for terminating Anderson were not true. The record makes clear that Board members had reason to believe that Anderson provided false or misleading responses to its questions. Anderson has failed to provide evidence that the Board's beliefs were unwarranted, unfounded, or contrived. Accordingly, Anderson's alleged dishonesty—which resulted in the Board's loss of confidence in his ability to do his job—constitutes

No. 13-60666

a legitimate nondiscriminatory reason for his termination which he has failed to rebut.[2]

Viewing the facts in the light most favorable to Anderson, we conclude that there is no genuine issue of material fact with respect to whether TRAA terminated Anderson because of his age.

## III.  CONCLUSION

For the foregoing reasons, we conclude that the district court did not err in its summary judgment for TRAA.  Accordingly, we affirm.

---

[2] Anderson also argues that a Board member's remarks about his being "too regimented" and "set in his ways" demonstrates that the stated reasons for his termination are pretextual.  We disagree.  We have "repeatedly held that stray remarks do not demonstrate age discrimination." *See EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996) (citations and internal quotation marks omitted).  "In order for an age-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee."  *Id.* Anderson has made no such showing.  Therefore, his argument on this point is without merit.