ISHEE, J.,
for the Court:
¶ 1. In January 2005, EMJ Corporation (EMJ) entered into an agreement with Contract Steel Construction Inc. (CSC) to serve as a subcontractor on a construction *297 project in DeSoto County, Mississippi, on which EMJ was serving as the general contractor. Part of CSC’s duties included the installation of a roof ladder, otherwise known as a ships ladder. The ladder was manufactured by a third party, delivered to the job site, and installed by CSC in April 2005. An authorized EMJ representative inspected the ladder and approved installation. Approximately two weeks later, John Meeker was injured after falling down the ladder. Meeker filed suit in the DeSoto County Circuit Court naming EMJ and CSC, among others, as defendants. EMJ then filed a countersuit against CSC claiming CSC breached its contract by failing to install non-slip surfaces on the ladder’s steps, thereby causing Meeker’s fall. In December 2009, the circuit court granted CSC’s motion for summary judgment after concluding that CSC’s contract was ambiguous and that CSC did not have a duty to install the non-slip surfaces. EMJ appeals. Finding no error, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. EMJ was hired by J.C. Penny to serve as the general contractor on the construction of a new J.C. Penny store being built in Southaven, Mississippi. In 2005, EMJ contracted with CSC to provide “[a]ll steel erection work.” Included in the listed scope of CSC’s work was “Section 05500” which referenced metal fabrications and stated CSC would “[pjrovide non-slip surface on the top of each rung [of ladders,] either by coating the rung with aluminum oxide granules set in epoxy resin adhesive, or by using a type of manufactured run which is filled with aluminum oxide grout.”
¶ 3. Nonetheless, CSC was only charged with installing ladders that were made by third parties. The contract noted that “[m]aterials [would be] provided by others,” and it specified CSC was only to complete “[[Installation of roof ladder.” A separate subcontractor was charged with designing the ladder; yet another subcontractor, Harrell’s Metal Works (HMW), was hired to fabricate the ladder according to the ladder’s drawings. HMWs agreement with EMJ also listed “Section 05500” within the scope of work and charged HMW with completing the same task of applying non-slip surfaces to ladder rungs.
¶ 4. On or about April 15, 2005, CSC was informed that the ladder in question had been received at the job site. CSC sent Curits Walden, one of its employees, to install the ladder. Walden “tack welded,” or temporarily welded, the ladder to the roof and sought approval from EMJ’s project manager, Randy Hartline, for final installation. Walden informed Hartline that the ladder was too short for the space and that the rungs of the ladder were not perfectly parallel to the floor. The incorrect length of the ladder and the imperfections in the rungs were unimportant to Hartline and he asked Walden to complete installation. Walden complied and welded the ladder to the wall. He then waited while EMJ’s employees poured a concrete cap over the base of the floor underneath the ladder and finalized installation by welding the bottom of the ladder to the concrete, anchoring the ladder to the ground. The next day, Walden returned for EMJ’s final inspection. Hartline inspected the ladder, approved installation, and Walden left the job site.
¶ 5. Approximately two weeks later, another subcontractor was called by EMJ to inspect the roof. Meeker, an employee of the subcontractor, was sent to complete the inspection and used the ladder at issue to access the roof. After climbing up the ladder without incident, he began to descend the ladder and fell, causing serious bodily injury. Upon learning of Meeker’s *298 fall, EMJ asked HMW to apply the nonslip surfaces on the ladder’s rungs. EMJ also notified HMW there would be deductions made from HMW’s final payment to compensate for the lack of non-slip surfaces. CSC was never asked to return to the job site and install non-slip surfaces on the ladder’s rungs, nor were CSC’s payments ever reduced or off-set. Trey Hall, an EMJ manager, later explained under oath that EMJ never hired CSC to apply the non-slip surfaces on ladder rungs and was never asked to do so either before or after Meeker’s fall.
¶ 6. After the fall, Meeker was diagnosed as paraplegic and filed suit in the circuit court in 2008 against EMJ, CSC, HMW, and several others claiming the lack of non-slip surfaces on the ladder’s rungs caused his injuries. Shortly thereafter, EMJ filed a countersuit against CSC asserting it was CSC’s contractual duty to install the non-slip surface, and CSC had breached its duty. HMW was voluntarily dismissed with prejudice, as were several other defendants. Another defendant was granted summary judgment, leaving EMJ and CSC as the only remaining defendants in the case.
¶ 7. CSC filed a motion for summary judgment in October 2009 as to EMJ’s counterclaim and Meeker’s claim. Therein, CSC claimed the existence of “Section 05500” in HMW’s contract rendered the contracts ambiguous, and testimony from EMJ’s project manager and CSC’s representative clarified that CSC was never expected to apply the non-slip surfaces on the ladder’s rungs. The circuit court entered an order in December 2009 granting CSC summary judgment under Mississippi Rule of Civil Procedure 54(b). In the order, the circuit court referenced the presence of “Section 05500” in the two contracts and noted that two subcontractors could not have both been charged with the same task; thus, CSC’s contract was ambiguous. Furthermore, testimony proved EMJ never expected CSC to apply the non-slip surfaces on the ladder’s rungs despite the language in CSC’s contract. As such, CSC was dismissed from Meeker’s suit as well as EMJ’s countersuit.
¶ 8. EMJ appeals claiming that material facts remain regarding CSC’s liability to Meeker and that the circuit court erred in its grant of summary judgment to CSC. We affirm the circuit court’s judgment.
DISCUSSION
¶ 9. The Mississippi Supreme Court has held that an appellate court “reviews a trial court’s grant or denial of a motion for summary judgment or a motion to dismiss under a de novo standard.” Copiah County v. Oliver, 51 So.3d 205, 207 (¶ 7) (Miss.2011) (citation and italics omitted). Summary judgment is proper “if the pleadings, depositions, answers to interrogatories!,] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Palmer v. Anderson Infirmary Benevolent Ass’n, 656 So.2d 790, 794 (Miss.1995) (quoting M.R.C.P. 56(c)). Although this Court must view the evidence in the light most favorable to the non-moving party, the party opposing the motion “may not rest upon the mere allegations or denials of his pleadings, but his response ... must set forth specific facts showing that there is a genuine issue for trial.” M.R.C.P. 56(e). “[W]hen a party! ] opposing summary judgment on a claim or defense ... fails to make a showing sufficient to establish an essential element of the claim or defense, then all other facts are immaterial, and the moving party is entitled to judgment as a matter of law.” Galloway v. Travelers Ins. Co., 515 So.2d 678, 684 (Miss.1987). *299 ¶ 10. EMJ first claims the circuit court erred by granting summary judgment in favor of CSC with regard to Meeker’s claims. However, EMJ does not have standing to appeal the circuit court’s dismissal of CSC from Meeker’s case. The law is clear that one may not appeal a judgment to which he or she is not a party unless he or she retains a personal stake in the outcome of the appeal and is thereby aggrieved by the underlying judgment. See, e.g., Myatt v. Peco Foods, 22 So.3d 384, 337 (¶ 5) (Miss.Ct.App.2009) (citing Deposit Guar. Nat’l Bank v. Roper, 445 U.S. 326, 333-34, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980); Klamath Strategic Inv. Fund ex rel. St. Croix Ventures v. United States, 568 F.3d 537, 546 (5th Cir.2009)).
¶ 11. Here, Meeker adopted by reference EMJ’s response to CSC’s motion for summary judgment and agreed with EMJ’s argument that CSC was negligent in permanently installing a ladder not conforming to CSC’s contract. However, Meeker reiterated his position that despite his claim against CSC, EMJ was independently negligent in causing his injuries. As such, the absence of CSC in Meeker’s case would not eliminate EMJ’s liability, and EMJ has put forth no evidence that it would directly suffer from CSC’s dismissal. EMJ has only argued that it would be indirectly prejudiced as pertaining to its defense of Meeker’s claim.
¶ 12. Assuming arguendo that EMJ has a direct interest in CSC’s dismissal from Meeker’s case, EMJ’s interest would necessarily be predicated on CSC being found liable to some extent for the injuries at hand. However, the circuit court’s determination that CSC had no duty to apply the non-slip surfaces to the ladder’s rungs is dispositive to both Meeker’s and EMJ’s cases against CSC.
¶ 13. The circuit court concluded CSC’s work on the ladder was finalized and approved by EMJ and possibly also by J.C. Penny. However, the record is clear that final installation of the ladder was, at the very least, accepted by EMJ’s manager, Hartline. After viewing Walden’s temporary welding of the ladder, Hartline instructed CSC’s employee to finalize the installation of the ladder. Walden welded the ladder to the wall, then waited while EMJ’s employees poured a concrete cap under the base of the ladder. Walden then finalized the welding process by anchoring the ladder to the concrete base. He was never contacted by anyone at EMJ again regarding work on the ladder. It was not until two weeks after the concrete cap was poured and CSC’s employees finished their installation that Meeker was injured, and someone at EMJ contacted someone at HMW to apply the non-slip surfaces to the ladder’s rungs.
¶ 14. We find it irrelevant that CSC’s and HMFs contracts contained “Section 05500” charging them both with the duty of applying the non-slip surfaces. While this evidence may deem the contracts ambiguous, it is extrinsic and unnecessary information considering EMJ’s clear acceptance of CSC’s work on the ladder. It has long been held:
The general rule is well established that an independent contractor is not liable for injuries occurring to a third person after the contractor has completed the work and turned it over to the owner or employer and it has been accepted by him, even though the injury results from the contractor’s failure properly to carry out his contract. When the work is finished by the contractor and accepted by the employer, the latter is substituted as the party responsible for existing defects, and the same rule is applied to subcontractors, so as to relieve them *300 from liability to the original employer where their work has been finished and accepted by the original contractor.
Fischbach & Moore, Inc. v. Foxworth, 246 Miss. 814, 819, 152 So.2d 714, 716 (1963) (emphasis added) (quotation omitted).
¶ 15. The record shows Hartline approved final installation of the ladder. Walden testified that after showing Hartline the temporary weld of the ladder, “[Hartline] said weld it up, weld the handrails on it, looks good[,] and that’s all.” Walden further stated: “I said do y’all want to weld it up? [Hartline] said weld it up, get it welded up, put the handrails on it, get it secure; and so we welded it up, put the handrails on it and that was the last time I met with him.” Furthermore, two weeks passed from the time all welding was completed on the ladder until Meeker was injured from falling on the ladder, with no work performed on the ladder anytime after the final installation. It was only after Meeker’s fall that someone at EMJ ordered the non-slip surfaces be applied on the ladder and contacted someone at HMW to perform the work, not a CSC employee. No one at EMJ ever contacted anyone at CSC regarding work on the ladder after Walden left the job site following his final installation two weeks prior to Meeker’s accident.
¶ 16. The evidence supports the circuit court’s conclusion that no material fact exists to support either Meeker’s or EMJ’s claim that CSC was liable for the ladder’s lack of non-slip surfaces. EMJ accepted CSC’s final installation of the ladder which eliminated any possible liability on CSC’s part. These issues are without merit.
¶ 17. THE JUDGMENT OF THE DE-SOTO COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.