## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 16, 2016

Lyle W. Cayce
Clerk

No. 15-60254

————

EMJ CORPORATION; WESTCHESTER FIRE INSURANCE COMPANY,

Plaintiffs - Appellees Cross-Appellants

v.

HUDSON SPECIALTY INSURANCE COMPANY,

Defendant - Appellant Cross-Appellee

————

Appeals from the United States District Court
for the Northern District of Mississippi

————

Before STEWART, Chief Judge, and JONES and DENNIS, Circuit Judges.

EDITH H. JONES, Circuit Judge:

This is an appeal and a cross-appeal of a dispute concerning excess insurance policies and pro rata coverage. We largely agree with the district court's well-reasoned resolution of these issues and affirm.

## BACKGROUND

In early 2005, Westchester was a commercial umbrella insurer for EMJ Corporation, a general contractor building a J.C. Penney store in Southaven, Mississippi. During that project, EMJ subcontracted with Contract Steel Construction, Inc. for steel erection services. As part of the subcontract, Contract Steel agreed to obtain insurance to protect it and EMJ from personal injury claims. Contract Steel purchased a commercial umbrella policy from Hudson Insurance.

No. 15-60254

Contract Steel installed a ladder leading from the ground to the roof of the building. The ladder was too short and was installed at an angle. Contract Steel made EMJ aware of this and EMJ accepted the ladder as it was. Two weeks later, a building inspector examining Contract Steel's work fell off the ladder and suffered a severe spinal injury.

The inspector filed suit against a group of defendants, including EMJ, in Mississippi state court seeking damages of $25 million. All of the defendants were dismissed until only EMJ was left and EMJ settled for five million dollars. Of this amount, EMJ's primary liability insurer covered one million dollars. Westchester covered the remaining four million dollars.

EMJ and Westchester filed suit against Hudson in the federal district court seeking reimbursement for the four million dollar settlement. In September 2014, the district court held a trial. The court made a series of rulings as a matter of law and a jury rendered a verdict on a limited fact question. The court entered judgment for EMJ and Westchester and awarded the full four million dollars against Hudson.

Upon Hudson's motion for reconsideration, the district court reversed its earlier ruling on the priority of coverage. It now determined that the four million dollars should be apportioned between Hudson and Westchester based on their policy limits. This led the district court to determine that Hudson was responsible for paying Westchester only $667,000 in damages. The district court denied Westchester's motion to reconsider. Both parties appealed.

We turn first to Hudson's arguments that it is not obliged to pay anything because its policy was never triggered. We then consider Westchester's arguments that Hudson must reimburse it in full. The

2

No. 15-60254

arguments are assessed under Mississippi law because the parties agree it governs this case.

## DISCUSSION

### I. Hudson's appeal: Whether it is obligated to indemnify EMJ for the legal settlement?

The main thrust of Hudson's appeal is that it has no duty to indemnify EMJ for the inspector's fall because the conditions of its policy were not satisfied. Hudson asserts four arguments for non-coverage: First, there was no "occurrence" under its policy. Second, EMJ's actions did not cause the inspector's fall. Third, EMJ was not an "additional insured" under its policy. Finally, EMJ did not exhaust all of the primary collectible insurance available to cover the inspector's fall.

#### A. Was the inspector's fall an "occurrence" under Hudson's policy?

Hudson first argues that its policy was never triggered because there was no "occurrence" as defined by its policy. The district court granted judgment as a matter of law on this issue, holding that the inspector's fall was a covered occurrence. This court reviews the district court's grant of judgment as a matter of law (JMOL) de novo. *See Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 525 (5th Cir. 2015). JMOL is proper where a "party has been fully heard by the jury on a given issue, and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." *Id.* (internal quotation marks omitted). To reverse a JMOL, "there must be more than a mere scintilla of evidence in the record to render the grant of JMOL inappropriate." *Id.* We review

questions of contract and insurance policy interpretation de novo. *Am. States Ins. Co. v. Nethery*, 79 F.3d 473, 475 (5th Cir. 1996).

Under the policy, a covered "bodily injury" must be caused by an "occurrence." Hudson's policy defines an "occurrence" as an "accident," but it does not cover any injuries "expected or intended from the standpoint of the insured."

This coverage language is common in the insurance industry and has been analyzed several times by the Mississippi Supreme Court. Time and again, that court has held that there is only one relevant consideration in determining if an injury is covered by such a policy: There *is* coverage unless the "chain of events leading to the injuries complained of were set in motion and followed a course consciously devised and controlled by [the insured] without the unexpected intervention of any third person or extrinsic force." *Architex Ass'n, Inc. v. Scottsdale Ins. Co.*, 27 So. 3d 1148, 1153–54 (Miss. 2010) (emphasis omitted) (quoting *U.S. Fid. & Guar. Co. v. OmniBank*, 812 So. 2d 196, 200 (Miss. 2002) (en banc) (quoting *Allstate Ins. Co. v. Moulton*, 464 So. 2d 507, 509 (Miss. 1985))).

Hudson responds that, under Mississippi law, whether there was an "occurrence" is determined by examining the actions of the insured, not the actions of the injured party. Further, if the insured's action (the one that eventually led to the injury) was intentional, it cannot, as a matter of law, constitute an occurrence in Mississippi. Because EMJ intentionally accepted the ladder, it cannot be an "occurrence." The district court erred, according to Hudson, by "conflating an intended action with unintended results."

We agree with the district court that the inspector's fall was an occurrence under Hudson's policy. This follows from the Mississippi Supreme

Court's instruction regarding the "only relevant consideration." Here, EMJ did not consciously devise or control the chain of events that led to the inspector's injuries. Hudson's contrary argument errs because it ignores the import of the Mississippi Supreme Court's instruction that we must consider whether the injuries to be covered were intended or expected by EMJ's actions, not whether the action that caused those injuries was intentionally taken. EMJ surely intended to accept the ladder, but EMJ did not intend for the inspector to fall and be grievously injured.

Our conclusion is supported by contrasting the Mississippi Supreme Court's precedents in this area. In *Architex*, the court considered a general contractor's suit against its insurer for coverage of poor workmanship completed by subcontractors. 27 So. 3d at 1154. The insurer refused coverage because the general contractor's action was the intentional hiring of the subcontractor. The Mississippi Supreme Court affirmed coverage. *Id.* at 1161–62. The intentional act may have "set in motion" the events leading to the damages, but those damages did not result from "a course consciously devised and controlled by [the general contractor], without the unexpected intervention of any third person or extrinsic force." *Id.* at 1159. Under *Architex*, an intentional action taken without an intent or expectation of damages does not defeat a finding of "occurrence."

Similarly, in *Southern Farm v. Allard*, a man fired a warning shot not intended to strike anyone, but a victim had unexpectedly stepped into the path of the bullet and was injured. *See S. Farm Bureau Cas. Ins. Co. v. Allard*, 611 So. 2d 966, 967–68 (Miss. 1992). Firing the warning shot was an occurrence, the court concluded, because no injury was expected or intended by the insured. *Id.* at 968. Once again, an intentional act taken without the

No. 15-60254

intention of causing the complained-of injury was found to be an occurrence. *See also OmniBank*, 812 So. 2d at 201 (discussing *Allard*).

The cases that Hudson relies on—*OmniBank* and *Moulton*—are inapposite because they concern intentional actions taken with the intention or expectation of causing injury. In *OmniBank*, a car owner sued the company that financed her car for wrongfully force-placing insurance coverage on the car. 812 So. 2d at 197–98. The lender sued its insurer after the insurer refused to defend the car owner's suit. *Id.* at 198. The Mississippi Supreme Court determined there was no "occurrence," because the lender intentionally force-placed the coverage and intentionally charged the car owner for that coverage. *Id.* at 201. In other words, the injuries complained of (the cost of the force-placed coverage) were "set in motion and followed a course consciously devised and controlled by [the lender], without the unexpected intervention of any third person or extrinsic force." *Id.*

In *Moulton*, a woman sought coverage from her homeowners insurance after she was sued for malicious prosecution. 464 So. 2d at 508. The Mississippi Supreme Court held that her actions leading to the malicious prosecution suit were not "occurrences:" "[The homeowner] obviously intended to swear out the complaint against [the plaintiff]. Although she may not have intended him to suffer humiliation and embarrassment, she certainly intended for him to be arrested." *Id.* at 510.

The lesson of these cases is that intentional actions taken without an intent or expectation of causing any injury are occurrences for insurance purposes. Because EMJ accepted the ladder without any intention or expectation of causing the inspector's injuries, we agree this was an occurrence under the Hudson policy.

6

**B. Did EMJ's actions cause the inspector's fall?**

Hudson next asserts that no proof was offered at trial that the inspector's fall was caused by the faulty ladder.  Because the Hudson policy is only triggered if the bodily injury complained of is *caused* by an occurrence, Hudson's argument is that EMJ never proved causation.  Hudson also argues that EMJ's actions could not have "proximately" caused the inspector's injuries because if they were unexpected for purposes of the "occurrence" requirement, they could not be foreseeable for the purposes of causation.

Hudson did not make these arguments to the district court and thus they are waived.  *See Constitution State Ins. Co. v. Iso-Tex Inc.*, 61 F.3d 405, 410 (5th Cir. 1995).  We note, however, that there is no indication from Hudson's brief on appeal or our review of the record that there would be a "legally sufficient evidentiary basis for a reasonable jury to have found for" Hudson on this issue.  *Weiser-Brown*, 801 F.3d at 525.  There was substantial uncontroverted evidence demonstrating that the inspector fell, in part, because of the faulty ladder that EMJ accepted.  There is also no merit to Hudson's contention that because the inspector's injury was not the expected result of EMJ's action, the injury could not have been proximately "caused" by EMJ's actions.  *See City of Carter Lake v. Aetna Cas. & Sur. Co.*, 604 F.2d 1052, 1058 (8th Cir. 1979); *see also Essex Ins. Co. v Greenville Convalescent Home Inc.*, 236 F. App'x 49, 53 (5th Cir. 2007) (per curiam).  That argument—for which Hudson provides no case law support—confuses distinct insurance law and tort law concepts.

**C. Was EMJ an "insured" under the Hudson policy?**

Hudson next argues that EMJ was not covered by the Hudson policy.  It is undisputed that EMJ was not listed on the Hudson policy by name.

However, the Hudson policy's "Additional Insured" provision covers "[a]ny person or organization for whom you have agreed in writing prior to any 'occurrence' . . . to provide insurance such as is afforded by this policy, *but only with respect to operations performed by you* [Contract Steel] *or on your behalf*." (emphasis added).  The interpretation of the italicized phrase went to the jury, which found that the inspector's activities and injuries respected Contract Steel's operations.

Hudson first argues that, under Mississippi law, "with respect to" should be interpreted as requiring Contract Steel's operations to be a "direct cause" of the inspector's fall.  The district court instructed the jury that this language only requires some causal connection.  This challenge to the jury instructions is reviewed for an abuse of discretion.  *See Baker v. Canadian Nat'l/Ill. Cent. R.R.*, 536 F.3d 357, 363 (5th Cir. 2008).  If the jury instruction incorporates state law, as here, we review the district court's determination of state law de novo, though the district court still has "wide discretion" in formulating the jury charge.  *Id.* at 364.  This court only reverses a judgment on a jury instruction challenge "if the charge as a whole creates a substantial doubt as to whether the jury has been properly guided in its deliberations."  *Id.* at 363–64.

This instruction was not an abuse of discretion.  Hudson cites no case that interprets the "with respect to" language as imposing a direct cause requirement in this context or any analogous context.  Without such authority, it was proper under Mississippi law to interpret this policy term using its "plain, ordinary, and popular meaning."  *State Farm Mut. Auto. Ins. Co. v. LogistiCare Solutions, LLC*, 751 F.3d 684, 688 (5th Cir. 2014).  "With respect to" is just another way of saying something "concerns" or "relates" to another

specified thing. *See Webster's Third New International Dictionary* 1934 (1981). Nothing about that language requires a direct causal connection. Hudson's policy language is similar to policy language where the additional insured is insured "with respect to liability arising out of your ongoing operations performed for [the] insured." This court has held that, under Mississippi law, such language requires only a causal connection between the additional insured and the insured's operations. *See Carl E. Woodward, LLC v. Acceptance Indem. Ins. Co.*, 743 F.3d 91, 98 (5th Cir. 2014).[1] In sum, there was no abuse of discretion in this jury charge.

Hudson also asserts that EMJ presented no evidence of a relationship between Contact Steel's operations and the inspector's fall. This is a challenge to the legal sufficiency of the evidence supporting the jury verdict. A verdict sustained by only a "mere scintilla of evidence" will not stand, but otherwise this court's review is "especially deferential" to the jury's determinations. *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014). Here, there was more than a scintilla of evidence of a relationship between Contact Steel's operations and the inspector's fall: the inspector was at the site to inspect Contact Steel's work, he was climbing down from having inspected Contact Steel's work when he fell, and he fell from a ladder installed by Contact Steel. We affirm the jury verdict on this issue.

---

[1] In addition, the Texas Supreme Court has interpreted "with respect to" language as requiring only some form of "causal connection or relation" between the injuries and the primary insured's operations. *See Evanston Ins. Co. v. ATOFINA Petrochems., Inc.*, 256 S.W.3d 660, 665–66 (Tex. 2008).

### D. Did EMJ exhaust all its primary insurance coverage, thus triggering Hudson's excess policy?

Hudson's final argument is EMJ failed to prove it exhausted all of the primary insurance coverage available to it before it turned to Hudson's excess policy. Under the Hudson policy's "When Loss Payable" provision, Hudson is not obliged to contribute to the settlement until EMJ pays the full amount of the "retained limit." This retained limit includes all of the "collectible primary insurance" applicable to the inspector's injuries.

The district court granted JMOL to EMJ, ruling it had proved exhaustion as a matter of law. We agree. EMJ presented evidence that none of its other subcontractors were involved in the ladder's installation and no involved entities besides Contract Steel were required (by EMJ) to maintain insurance. Thus, there could be no other collectible primary insurance. Hudson offered no evidence to the contrary.

Hudson also complains that the district court shifted the burden on this fact issue, demanding that Hudson prove there was other insurance rather than forcing EMJ to prove exhaustion. The district court did not shift the burden. It merely recognized that Hudson failed to marshal any contrary evidence creating a fact issue on whether the insurance was exhausted. Without this evidence, JMOL was proper for EMJ on this point. *See Travis v. Bd. of Regents of the Univ. of Tex. Sys.*, 122 F.3d 259, 263 (5th Cir. 1997).

In sum, Hudson's four arguments challenging coverage by its policy fail. Hudson was required to indemnify EMJ, at least in part, for the legal settlement from the inspector's fall.

## II. Hudson's appeal: Evidentiary issues

Hudson also appeals two evidentiary rulings by the district court and asserts that these errors necessitate a new trial. This court reviews challenges to evidence admitted or excluded for abuse of discretion. *See Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000). We only reverse if "substantial prejudice" resulted from the error. *Id.* In this case, even assuming that the district court erred in these evidentiary rulings, neither resulted in substantial prejudice.

Hudson's objection to the testimony of Lynn Menschenfreund, Westchester's vice president of claims, is meritless. Even if the testimony was erroneously admitted, which it was not, there was no substantial prejudice. Menschenfreund's was not the only evidence on issues of occurrence and other insurance. There was additional substantial evidence concerning the inspector's injury as an unexpected, unintentional accident—most notably, the inspector's own testimony. There was additional substantial evidence that no other insurance policies were relevant to the inspector's injuries.

Further, the district court did not err in excluding a listing of undisputed facts from the Mississippi Court of Appeals' opinion in *EMJ Corp. v. Contract Steel Constr., Inc.*, 81 So. 3d 295 (Miss. Ct. App. 2012). Hudson argues that these facts would have demonstrated that EMJ knew about the dangerous condition of the ladder and thus "expected" the injuries to occur. Again, even assuming error, there was no substantial prejudice. All of the facts contained in the court of appeals opinion were before the district court. In rendering its JMOL ruling, the court ruled as it did in spite of those facts, not because it ignored them.

### III. Westchester's cross-appeal: Must it contribute to cover the settlement?

Westchester's cross-appeal concerns the district court's ruling that both the Hudson and Westchester policy were "true excess" policies and must contribute to the settlement amount pro rata. Initially, the district court ruled that Westchester's policy was excess to Hudson's policy and thus Hudson must exhaust its limit before Westchester would pay. This left Hudson on the hook for the four million dollar settlement. But on reconsideration, the court reinterpreted the policy language. The court ruled that both policies were excess and conflicted with each other. Under this state of affairs in Mississippi law, contribution is pro rata and the district court determined that Westchester's policy (with a $25,000,000 limit) must pay 5/6 of the settlement amount and Hudson's policy (with a $5,000,000 limit) must pay the remaining 1/6. This reduced the damages owed by Hudson to 1/6 of four million dollars, or $667,000.

On appeal, Westchester argues that three distinctive features of its policy make it excess to Hudson's policy. The first two features deal with the dueling "Other Insurance" clauses. The third argument deals with the two policies' "Retained Limit" clauses. Finally, Westchester argues that the terms of the subcontract—requiring Contract Steel to acquire a *primary* policy to insure EMJ—further confirm this understanding of the policy priority and, under the logic of a recent Fifth Circuit decision, can be incorporated by reference into the Hudson policy itself. We address each of these arguments in turn.

## A. "Other Insurance" clauses

The language of the "Other Insurance" clause in each policy is central to the parties' arguments:

Hudson's Other Insurance clause:

**10. Other Insurance**

If other valid and collectible insurance is available to the insured for "ultimate not loss" we cover under this policy, our obligations under this policy are limited as follows:

a. As this insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, except such insurance as is specifically purchased to apply in excess of this policy's Limit of Insurance, we will pay only our share of the amount of "ultimate net loss", if any, that exceeds the sum of:

   (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

   (2) The total of all deductible and self-insured amounts under this or any other insurance.

b. We will have no duty under Coverages A and B to defend any "claim" or "suit" if any other insurer has a duty to defend against that "claim" or "suit". If no other insurer defends, we may undertake to do so, but we will be entitled to the insured's rights against all other insurers.

Westchester's Other Insurance clause:

**H. Other Insurance.** If there is any other collectible insurance available to the "Insured" (whether such insurance is stated to be primary, contributing, excess or contingent) that covers a loss that is also covered by this policy, the insurance provided by this policy will apply in excess of, and shall not contribute with, such insurance. This Condition H does not apply to any insurance policy purchased specifically (and which is so specified in such insurance policy) to apply in excess of this policy.

Westchester first argues that the presence of the phrase "shall not contribute" marks it as a true excess policy,[2] while Hudson's policy envisions contribution by stating that it will pay its "share of the amount" and thus is a pro rata policy.[3]  If this is correct, the pro rata policy must be fully exhausted

---

[2] An excess policy "provide[s] that an insurer's liability is limited to the amount by which the loss exceeds the coverage provided by all other . . . insurance."  1 Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes § 11.02(b), at 895 (14th ed. 2008).  In other words, a true excess policy only begins to pay when all other collectible insurance has been exhausted.

[3] A pro rata policy "provide[s] that if other insurance exists, the insurer will pay its pro rata share of the loss, usually in the proportion that its policy limit bears to the aggregate

before the excess policy has to pay.  *See Cont'l Cas. Co. v. Coregis Ins. Co.*, 213 F. Supp. 2d 673, 678 (S.D. Miss. 2002) (citing *Blue Cross & Blue Shield of Miss., Inc. v. Larson*, 485 So. 2d 1071, 1073 (Miss. 1986)).

Westchester argues that when a purportedly excess insurance policy contemplates (or does not negate) the possibility of contribution with other excess policies, it must be fully exhausted before a policy that explicitly negates any contribution with other excess policies.  *See Atl. Mut. Ins. Co. v. Truck Ins. Exch.*, 797 F.2d 1288, 1296 (5th Cir. 1986) (applying New York law and citing *State Farm Fire & Cas. Co. v. LiMauro*, 482 N.E.2d 13, 18 (N.Y. 1985)).

Hudson disputes this is the rule in Mississippi, but argues it makes no difference in this case:  Its policy operates exactly like Westchester's policy and negates the possibility of contribution.  By its plain terms, Hudson's policy only pays after every other type of policy pays ("As this insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis . . ."), except for a policy that "is specifically purchased to apply in excess of this policy's Limit on Insurance."

Hudson is correct: Both policies negate the prospect of contribution.  Westchester's policy does so more explicitly, but the plain language of Hudson's policy also negates contribution.[4]    Contrary to Westchester's argument, Hudson's policy does not say it will "share" in the excess amount or pay "our share" of the excess amount.  Instead, Hudson will pay its "share" of the

---

limit of all other valid and collectible insurance."  1 Ostrager & Newman, *supra* note 1, § 11.02(a), at 895.

[4] We express no opinion or holding on whether the rule in Mississippi is that a policy explicitly contemplating or failing to negate contribution must fully exhaust before an excess policy which specifically negates contribution.

"ultimate net loss, if any" that exceeds what "all such other insurance would pay for the loss in the absence of this insurance." The reference to "all such other insurance" refers back to the first part of the sentence, which says "this insurance is excess over any other insurance." In addition, only when every other option is exhausted—as if the Hudson policy never existed—will the Hudson policy step in and pay. This language does not contemplate contribution, but instead negates it. At bottom, both Westchester's and Hudson's policies seek to operate as true excess policies, covering loss only when all other insurance is exhausted.

Reading both policies as true excess policies is consistent with the Mississippi Supreme Court's instruction that more specific rejections of insurance coverage should not be favored over more general rejections of coverage. *See Travelers Indem. Co. v. Chappell*, 246 So. 2d 498, 503–04 (Miss. 1971). Though Westchester's policy contains more specific language negating contribution, the "two policies are indistinguishable in meaning and intent" on this topic. *Id.* at 504.

Westchester's second "Other Insurance" argument is that it specifies the only type of policy that can be excess to it: a policy "purchased specifically (and which is so specified in the insurance policy) to apply in excess" of the Westchester policy. Because Hudson's policy does not identify by name the Westchester policy, the Westchester policy is excess to the Hudson policy. Westchester also argues that its policy was "specifically purchased to apply above" the Hudson policy and thus is excess according to Hudson's own policy terms.

Westchester's arguments are unavailing. The plain language of its policy does not require other excess policies to call out the Westchester policy

by name. It requires only that the other policy be purchased to apply in excess of the Westchester policy and say so in the policy. As has been noted, the Hudson policy unequivocally states that it will be excess to "any other insurance." By implication, this includes the Westchester policy.

By the same token, even if we accept Westchester's argument that it was "specifically purchased to apply above" the Hudson policy's Limit of Insurance, that only means that each policy contains language marking it as a true excess policy. Comparing these clauses in the "Other Insurance" provisions inescapably points to the conclusion that the policies conflict as true excess policies. Under Mississippi law, they are "mutually repugnant" and cancel each other out.

## B. Retained Limit clauses

Westchester also points to the "Retained Limit" clauses as supporting its preferred result. Both policies state they will pay after the "Retained Limit" is exhausted, but they define that limit in different ways. Hudson's policy envisions being triggered after the exhaustion of any underlying insurance and "other collectible *primary* insurance." (emphasis added). Westchester's policy, in contrast, is triggered by the exhaustion of the underlying insurance and "any other insurance." Westchester argues this indicates that its policy alone is a true excess policy, as it only begins to pay when there is no other insurance left. Hudson's policy follows the primary policies, but does not envision being the absolute last policy to pay.

The difference between the retained limit clauses is irrelevant because Mississippi courts resolve competing policies through reference to the "Other Insurance" clauses. *See Chappell*, 246 So. 2d at 501–04. The language of "Other Insurance" clauses evidences the parties' intent and controls the

inquiry on the topic of policy priority.  *See Southern Ins. Co. v. Affiliated FM Ins. Co.*, No. 15-60472, 2016 WL 3947761, at \*9 (5th Cir. July 21, 2016) (published) (applying Mississippi law) ("The other-insurance clauses are designed to dictate priority of coverage between multiple policies.").  This approach is reflected by a number of Mississippi cases which assess policy priority and sharing only through reference to the Other Insurance clauses— even if they are found "mutually repugnant" and cancel each other out.[5] Several prominent insurance law treatises also endorse resolving conflicts primarily through reference to the "Other Insurance" clauses:  "Where [Other Insurance] clauses are in effect, each insurer's ultimate liability is generally determined by the explicit provisions of the respective other insurance clauses."  15 Steven Plitt et al., Couch on Insurance § 219.1 (3d ed.).[6]  Thus, we will not hold one policy excess to another policy by looking to the language of the "Retained Limit" clause.

## C. Extrinsic Evidence

Finally, Westchester argues the extrinsic evidence: the subcontract and certificate of insurance.  The subcontract between EMJ and Contract Steel required Contract Steel to acquire insurance to cover EMJ for injuries arising from the project and furnish a certificate of insurance.  The subcontract also provided: "This insurance shall be *primary* and shall name [EMJ] as an additional insured."  (emphasis added).  Fulfilling these requirements,

---

[5] *See, e.g.*, *Allstate Ins. Co. v. Chi. Ins. Co.*, 676 So. 2d 271, 275 (Miss. 1996); *Titan Indem. Co. v. Am. Justice Ins. Reciprocal*, 758 So. 2d 1037, 1039–42 (Miss. Ct. App. 2000); *see also Cont'l Cas. Co.*, 213 F. Supp. 2d at 678–79; *Farmers Ins. Exch. v. Hartford Cas. Ins. Co.*, 907 F. Supp. 234, 236–38 (S.D. Miss. 1995).

[6] *See also* 1 Ostrager & Newman, *supra* note 1 § 11.03; 4 Douglas R. Richmond, New Appleman on Insurance Law Library Edition § 24.07(3)(a),(b) (Aviva Abramovsky ed. 2015).

Contract Steel purchased the Hudson policy and listed it on the certificate provided to EMJ.  Thus, the subcontract confirms the understanding that the Hudson policy is to be primary to the Westchester policy.  According to Westchester, "it is always appropriate to consider the 'circumstances' and 'overall insuring scheme' to 'determine the intention of each contract within' that scheme."  (quoting *Allstate Ins. Co. v. Emp'rs Liab. Assurance Corp.*, 445 F.2d 1278, 1283 (5th Cir. 1971) (applying Illinois law)).

This argument is unconvincing.  As the district court recognized on reconsideration, Mississippi courts do not consider extrinsic evidence if insurance policy provisions are unambiguous.  *See Woodruff v. Thames*, 143 So. 3d 546, 554–55 (Miss. 2014).  Here, the policies are unambiguous.  It would be inappropriate to consider various other documents in an attempt to determine the scope of the policies' coverage.  *See LogistiCare*, 751 F.3d at 688.

Finally, Westchester contends that the Hudson policy should be read to incorporate the subcontract's provision that the Hudson policy is the primary insurer of EMJ.  The Hudson policy references that subcontract when it says that "additional insureds" under its policy include any "person or organization for whom you have agreed in writing . . . to provide insurance as is afforded by this policy."  Drawing on a recent Fifth Circuit decision applying Texas law, Westchester argues that that the subcontract should be incorporated by reference into the Hudson policy.  *See Ironshore Spec. Ins. Co. v. Aspen Underwriting, Ltd.*, 788 F.3d 456, 460–61 (5th Cir. 2015) (discussing *In re Deepwater Horizon*, 470 S.W.3d 452 (Tex. 2015)).

This argument is also a nonstarter.  We do not "adopt innovative theories of recovery under state law" when sitting in diversity.  *Mayo v. Hyatt Corp.*, 898 F.2d 47, 49 (5th Cir. 1990).  Subverting the normal rules of insurance policy

interpretation in Mississippi because of *Ironshore* would be just such an innovative theory.  Mississippi's traditional rule is that mere references to extrinsic documents in a contract do not incorporate the terms of that document into the contract.  *See Woodruff*, 143 So.3d at 554–55.  The Texas Supreme Court arguably modified the traditional rule when it decided *Deepwater Horizon*.  *See Ironshore*, 788 F.3d at 460–61.  Here, there is no analogous Mississippi decision and, as recently as 2014, the Mississippi Supreme Court reaffirmed the traditional rule.

In sum, the "Other Insurance" clauses are both true excess clauses and thus are mutually repugnant.  We will not consult either the "Retained Limit" clauses or extrinsic evidence to tip the balance.  Under the law of Mississippi, where the "Other Insurance" clauses are mutually repugnant, "the clauses shall not be applied and benefits under the policies shall instead be pro rated according to the coverage limits of each policy."  *Allstate Ins. Co. v. Chi. Ins. Co.*, 676 So. 2d 271, 275 (Miss. 1996); *see also Southern Ins.*, 2016 WL 3947761, at \*9.  The district court correctly followed this law and ordered Hudson to pay Westchester 1/6th of the cost of the legal settlement.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.