LESLIE H. SOUTHWICK, Circuit Judge,
dissenting in part.
My disagreement with the majority concerns its analysis of the issue of authentication of the invoice from Visifi Nigeria Limited, I do not believe there was a stipulation. Accordingly, the exhibit on which most of the damage award is based was never properly admitted into evidence.
There were two documents that allegedly provided evidence of the REBEL’S storage costs. One was the Visifi invoice. The other was an invoice from Julius Berger Services, the party storing the REBEL. The two'documents are quite different. The Visifi invoice lists “demurrage” fees at $1,400 per day, totaling over $1 million by the end of January 2015. The' Julius Berger invoice lists “Tug storage” at $220 per day, totaling $120,120 as of March 25, 2015. The Visifi invoice lists security fees, a national inland waterway fee, impoundment fees, and overhauling fees, totaling over $400,000. The Julius Berger invoice lists stevedoring fees, mooring fees, labor and documentation fees, and taxes, totaling approximately $17,000. The Visifi invoice provides a Lagos, Nigeria address. The Julius Berger invoice provides a Warri, Nigeria address.’ The Visifi invoice lists a grand total of $1,460,200 as of the end of January 2015. The Julius Berger invoice lists a' grand total of $151,169.08 as of April 13, 2015. The parties dispute whether these documents complement one another or offer alternative calculations of storage-related costs.
The Julius Berger invoice was admitted without objection in the district court. Before trial, GIC submitted the Julius Berger invoice to the court as “a true and correct copy of its damages reflected in and to supplement [the Visifi invoice].” During *671 trial, GIC’s witness testified regarding the “demurrage” charges it was incurring from Julius Berger. At the end of trial, GIC moved to enter the Julius Berger invoice into evidence without objection, informing the court that the invoice reflects “[t]he storage charges.”
Freightplus and IMC consistently objected to the introduction of the Visifi invoice in the district court, and that document was never discussed at trial. Two months before trial, the parties objected to. the Visifi invoice because they alleged it was not produced during the discovery period, was not relevant, and was not properly authenticated. The district court overruled most of the objections, but it deferred on authentication because the document could “be authenticated at trial by witness testimony.”
In a proposed pretrial order filed the week before trial, GIC listed the exhibits it planned to introduce at trial. The .list .included the Visifi invoice and four other exhibits that Freightplus and IMC objected to on grounds of.authentication: “Shell Petroleum Contract and all related documents, P.O. No: 4510244867,” “ZED Energy Contract and all related documents, ZED 1021012 PO No. ZED/ GIC/13/VOL.11/09;” “Shell Petroleum Contract and all related documents PO No. 4510330438: $1,047,000.00,” and the “GIC Agency Authorization from GIC Oil and Gas Services, Ltd.” The proposed pretrial order also listed Godwin Ebolo as a GIC witness, saying this about his proposed testimony:
Mr. Ebolo will give testimony in his capacity as managing director of GIC Oil and Gas Services, LTD regarding the relationship between the two entities. His testimony is also necessary to authenticate Shell Petroleum Contract and all related documents, P.O. No: 4510244867, ZED Energy Contract and all related documents, ZED 1021012 PO No. ZED/GIC/13/VOL.11/09, Shell Petroleum Contract and all related documents PO No. 4510330438: $1,047,000.00, and GIC Agency Authorization from GIC Oil and Gas Services, Ltd.
GIC did not explain in the proposed pretrial order how it would authenticate the Visifi invoice. It did, however, note that it would call “[a]ny witness needed to authenticate any documents that cannot be agreed to by stipulation.”
The final pretrial order continued to list the Visifi invoice, the three contracts, and the agency agreement as GIC exhibits. It also noted the objections filed by Freight-plus and IMC. The final pretrial order did not list Godwin Ebolo as a GIC witness, but it continued to state GIC would call “[a]ny witness needed to authenticate any documents that cannot be agreed to by stipulation.”
At trial, GIC called Godwin Ebolo to testify. The following exchange took place:
[GIC]: Your Honor, I’d like to call Mr. Godwin Ebolo as my authentication federal witness.
[Freightplus]: Your Honor, we would object to this witness testifying. He was riot listed in the pretrial order. To the extent that he’s called specifically for a Rule 901 authentication, we will stipulate, and I think—
[IMC]: We’ll stipulate as well, Your Honor.
[GIC]: All right. And that’s all he was going to testify to, nothing substantive, just to authenticate those documents that Freightplus and IMC both objected to, which are the three contracts and the agency agreement..,
THE COURT: All right. So do we have a stipulation?-
[Freightplus]: Yes. As far as Freight-plus, yes. -
[IMC]: As far as IMC as well.
*672 THE COURT: Okay. Well, sir, you can go home. Oh, you still want to call him?
[Freightplus]: He’s been excused.
[GIC]: Oh, wait.
[Freightplus]: We stipulated to authentication. There’s no—-if that’s the only purpose, he would be testifying.
[GIC]: Yeah, He’s testifying for authentication.
[Freightplus]: We’ve stipulated. to. authentication.
[GIC]: Oh, you have?
[Freightplus]: Yes.
[GIC]: Oh, all right. I’m sorry. I heard you wrong.
[Freightplus]: No.
[GIC]: Okay.
THE COURT: So you can go home.
Whether this stipulation extended to the Visifi invoice, or just “the three contracts and the agency agreement,” is the central dispute.
After trial, the district court awarded over $1.8 million to GIC based almost entirely on the Visifi invoice, which it relied on instead of the Julius Berger inyoice. Both Freightplus and IMC filed Rule 59(e) motions in which they objected to the district court’s use of the Visifi invoice. They argued the invoice was not properly authenticated and did not accurately represent the REBEL’S storage charges, which were detailed in admitted invoices provided by Julius Berger—the entity actually storing the REBEL.
The district court denied the Rule 59(e) motions. Pointing to the portion of the' trial transcript reproduced above, the court concluded that “counsel for both Freight-plus and IMC apparently proffered a blanket Rule 901 authentication stipulation for Godwin Ebolo’s testimony before GIC’s counsel then responded regarding the documents to be authenticated.” The court explained that it “fairly took the intent of counsel for Freightplus and.IMC to be to stipulate as to authentication generally.” The court also rejected the argument that it was clear and manifest error to find the Visifi document “a more credible foundation for determining GIC’s. damages” than the Julius Berger invoice.
IMC later filed a Rule 60(b) motion notifying the court of new evidence demonstrating that the Visifi invoice did not accurately reflect .storage charges for the REBEL. This new evidence was a document just like the original Julius Berger invoice but updated to reflect current charges. The total demanded in the invoice for release of the REBEL was just over $186,000. IMC argued this document demonstrated that the Julius Berger invoice represented accurate storage-related costs and suggested that GIC knew the invoice represented accurate costs because Julius Berger was demanding payment from GIC. The district court denied the motion.
Freightplus has settled with GIC, but IMC continues to argue that the district court'erred in'awarding damages to GIC based on the'Visifi invoice. Whether the invoice was ever authenticated is the issue.
“Authentication is a condition precedent to the admission of evidence and is satisfied when a party presents evidence sufficient ‘to support a finding that the item is what the proponent claims.’ ” United States v. Barnes, 803 F.3d 209, 217 (5th Cir. 2015) (quoting Fed. R. Evid. 901(a)). We review challenges to evidentiary rulings for abuse of discretion. See EMJ Corp. v. Hudson Specialty Ins. Co., 833 F.3d. 544, 551 (5th Cir. 2016). ‘We, only reverse if ‘substantial prejudice’ resulted from the error.” Id. “Resolution of preliminary factual questions concerning the admissibility of evidence are reviewed for clear error.” Meadaa v. K.A.P. Enters., L.L.C., 756 F.3d 875, 880 (5th Cir. 2014). “[A] finding is clearly erroneous “when although there is evidence to support it, the *673 reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.’ ” Fed. Sav. & Loan Ins. Corp. v. Texas Real Estate Counselors, Inc., 955 F.2d 261, 265 (5th Cir. 1992) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).
I find clear error. GIC, the party introducing the authentication witness, clearly defined the scope of the stipulation to include “the three contracts and the agency agreement.” The scope of the stipulation must have made sense to the parties, because the proposed pretrial order that listed Godwin Ebolo as a witness stated he would authenticate three contracts and one agency agreement. The stipulation at trial did not mention the Visifi invoice.
The majority characterizes the transcript as showing that Freightplus and IMC offered to stipulate before GIC interjected with “qualifying language.” There is no indication, however, that the parties offered a “blanket stipulation.” Looking at the context, the transcript makes clear that before Freightplus could complete its sentence, IMC jumped in to say it would also stipulate, and GIC immediately responded, “All right. And that’s all he was going to testify to, nothing substantive, just to authenticate those documents that Freightplus and IMC both objected to, which are the three contracts and the agency agreement.” Only then—after GIC’s statement—did the district court ask the parties, “So do we have a stipulation?” At that point, what was explicitly before the court as an explanation of the stipulation, to which no one objected, is that it applied to the three contracts and the agency agreement, not the Visifi invoice.
The Visifi invoice is especially problematic because GIC wholly failed to explain it in the district court, yet it alone supports the majority of the damages awarded to GIC. As already noted, GIC introduced the Julius Berger invoice to the court before trial as “a true and correct copy of its damages reflected in and to supplement” the Visifi invoice. At trial, GIC’s witness testified about “demurrage” charges from Julius Berger, not Visifi. At the end of the trial, it was GIC who moved to introduce the Julius Berger invoice into evidence without objection, explaining to the court that the Julius Berger invoice reflected “[t]he storage charges.” There is no dispute that Julius Berger stored the REBEL. GIC provided no information at all about the Visifi invoice. Its relevance remains obscure, to say the least, though the district court found it relevant. As IMC points out, “there is no explanation anywhere in the record of who Visifi Nigeria Limited is, why they are providing the document, and from where the information contained within the document is obtained.”
In light of both the district court’s and my colleagues’ contrary view, there must be reasonable doubt about what the stipulation covered despite my sense there is none. Consequently, instead of simply holding that the Visifi invoice never was authenticated and it is too late now, I would reverse and remand to the district court for a hearing on the Visifi invoice that would allow it to be authenticated if that can be done, and also a new decision as to its relevance once someone explains what Visifi is.
I respectfully dissent on that issue.