# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 9, 2023

Lyle W. Cayce
Clerk

No. 21-30544

New Orleans Equity L.L.C., doing business as Galatoire's Restaurant, doing business as Galatoire's 33 Bar & Steak,

*Plaintiff—Appellant*,

*versus*

U.S. Specialty Insurance Company,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20-CV-1935

Before Higginbotham, Jones, and Oldham, *Circuit Judges*.

Per Curiam:*

Appellant, owner of Galatoire's in New Orleans, sued its insurance provider for refusing to cover its revenue losses suffered during the opening

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

months of the Covid-19 pandemic.  The district court granted summary judgment in favor of the insurance provider.  We affirm.

## I. Background

New Orleans Equity L.L.C. owns and operates Galatoire's Restaurant and Galatoire's 33 Bar & Steak on Bourbon Street.  One of the most popular members of Galatoire's wait staff worked the weekend of March 13 to 15, 2020.  Little did he or his employer know that he would test positive for Covid-19 on March 17.  The day before, on March 16, the Governor of Louisiana announced that, effective March 17, "all restaurants . . . shall cease allowing for any on premises consumption of food or beverages."  The City of New Orleans issued a similar order, announced on March 16 and effective March 17.  The evening of March 16, Galatoire's management decided to fire all 148 non-management employees.  By April 20, Appellant lost over $1,000,000 in gross revenue, which rose to $3,445,000 by September 23, 2020.

In March 2020, Appellant had an insurance policy with U.S. Specialty Insurance Company (USSIC) that covered business interruption losses "directly and solely caused" by an "accidental contamination" of an "insured product."  The policy did not contain a Covid-19, virus, or pandemic exclusion.  Appellant notified USSIC of a claim that it had sustained a loss due to accidental contamination of an insured product by the sick waiter.  USSIC conducted an investigation and denied coverage.  Appellant sued USSIC for breach of contract in federal court.[1]

Following discovery, both parties moved for summary judgment.  The district court granted summary judgment for USSIC.  This appeal followed.

---

[1] Diversity jurisdiction exists under 28 U.S.C. § 1332.  Appellant is a resident of Louisiana, USSIC is a resident of Texas, and the amount in controversy exceeds $75,000.

No. 21-30544

## II. Discussion

"This court reviews the district court's grant of summary judgment *de novo*, applying the same legal standards as the district court." *DePree v. Saunders*, 588 F.3d 282, 286 (5th Cir. 2009). A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The interpretation of an insurance policy is a question of law reviewed de novo. *EMJ Corp. v. Hudson Specialty Ins. Co.*, 833 F.3d 544, 547 (5th Cir. 2016).

To meet its burden of proving coverage under the policy, Appellant must show that (1) an insured event occurred (here, that insured products were accidentally contaminated), (2) the event was reported to USSIC, and (3) the insured event directly and solely caused a loss. Appellant fails to submit summary judgment evidence that it has satisfied the first and third requirements.

### 1. Insured Product

The parties agree that the policy covers business interruption losses if caused by an "accidental contamination" of an "insured product." The parties disagree over the proper interpretation of the term "Insured Products."[2] As defined by the policy, "Insured Products" means:

> all ingestible products for human consumption, or any of their ingredients or components, that have been reported to the

---

[2] Louisiana law governs the interpretation of this policy. Under Louisiana law, courts must interpret insurance policy terms according to "their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003) (citing La. Civ. Code. art. 2047).

*Insurer* on the application on file with the *Insurer* for the effective dates of this Policy or by addendum to such application and that are:

> a. in production; or

> b. have been manufactured, handled or distributed by the *Insured*; or

> c. manufactured by any contract manufacturer for the *Insured*; or

> d. being prepared for or are available for sale; or

> e. all ingestible products for human consumption served at any restaurant location operating under the same trade name as the *Insured*.

Appellant contends that Galatoire's itself is an insured product because it was "reported to the Insurer on the application." Under this reading, everything constituting the restaurant, such as the "plates, flatware, salt and pepper dispensers, etc.," is an "insured product." The district court rightly dismissed this argument as ignoring the clause's limiting term of "ingestible products for human consumption." Thus, Appellant's summary judgment evidence must show that food products, including "ingredients or components," were accidentally contaminated, and that contaminated food "directly and solely caused" its business interruption losses.

## 2. Contamination

The district court held, and USSIC argues, that Appellant must submit evidence of *actual* contamination of food products to meet its burden. Appellant essentially makes two arguments in response: (1) that it provided evidence of contamination via expert testimony; and (2) that a requirement of scientific testing or proof of sickness would render the contract illusory. The first is wrong, and the second misunderstands Appellant's burden under the policy.

*First*, Appellant emphasizes as evidence of contamination the report of its expert, Dr. Cameron, which concluded that the infected employee "*likely* unknowingly expelled infectious virus in tiny aerosolized droplets each time he spoke to patrons." (emphasis added). The report stated further that it "is therefore *likely* that [the waiter's] virus was distributed across all aspects of table service, contaminating food and beverages, utensils, and table linens." (emphasis added).

According to the plain meaning of its text, the policy mandates the insured to submit proof of actual contamination, not of likely contamination. The clause pertaining to "Notice of an Incident" requires the insured to "make every reasonable effort to . . . determine whether an Insured Event has *actually occurred*," and when submitting a "Notice of a Claim," the insured must determine "that an Insured Event has *actually occurred*." (emphasis added). Further, a comparison of the definitions of coverage for "Accidental Contamination" and "Malicious Tampering" supports this interpretation. The former has no qualifying language before "accidental or unintentional contamination, impairment or mislabeling of an Insured Product," while the latter begins, "Any actual, *alleged* or threatened intentional, malicious, and wrongful alteration *or contamination* of the Insured's Products . . . ." (emphasis added). Thus, if the "alleged wrongful contamination of an Insured Product" is covered under Malicious Tampering, then the Accidental Contamination clause should be read to cover only *actual* contamination of an insured product. It is undisputed that Appellant has neither provided evidence of actual contamination of food nor submitted a claim for malicious tampering.

*Second*, Appellant argues that if proof of actual contamination is required, then contamination of this kind will never qualify as an insured event. Appellant misunderstands the district court's opinion and USSIC's argument to be that actual contamination can only be proven by scientific

testing or by evidence of sick customers. To be sure, both of those types of evidence might suffice to show actual contamination, but neither is required by the policy. It is not USSIC's burden to show Appellant how to submit evidence of actual contamination. Appellant's frustration over its inability to proffer evidence of actual contamination suggests not that the policy is illusory, but that the contamination alleged here is not an insured event.

### 3. Causation

The biggest problem with Appellant's case is that Appellant cannot prove that the sick waiter's alleged contamination of food was the "sole and direct cause" of Appellant's business interruption losses. The district court heard argument on this issue but granted summary judgment to USSIC on the ground that Appellant had not shown that an insured event occurred. Nevertheless, this court may affirm the grant of summary judgment for any reason "supported by the record and argued in the court below," even if not relied upon by the district court. *Maria S. ex rel. E.H.F. v. Garza*, 912 F.3d 778, 783 (5th Cir. 2019); *see also LLEH, Inc. v. Wichita Cnty.*, 289 F.3d 358, 364 (5th Cir. 2002).

The policy defines "Loss" as including only the "reasonable and necessary expenses or costs incurred by the Insured *directly and solely as the result of a covered Insured Event*." (emphasis added). The undisputed facts show that the insured event, if it occurred, was neither the direct nor the sole cause of Appellant's business interruption losses. The facts are these: On March 16, upon learning of the Governor's and Mayor's announcements that would shut down in-person dining at Galatoire's, Appellant decided to fire all 148 non-management employees. Appellant admitted that it complied with the Governor's and Mayor's orders, that business slowed during the pandemic, and that Appellant reopened its restaurants when permitted. Appellant's representative testified during his deposition that he attributed

all of the company's financial losses to the pandemic. This evidence does not forbid the finding that food contamination was *a cause* of Appellant's losses. But it does mean that food contamination was not "the sole and direct cause."

Accordingly, Appellant has failed to submit summary judgment evidence that it proved coverage under the policy.

For the foregoing reasons, the district court's judgment is AFFIRMED.